JOSEPH AND SARAH LAPOINT *v.* OVID SAGE AND THOMAS LAPOINT.

October Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS and TAYLOR, JJ.

Opinion filed November 10, 1916.

*Judicial Notice—Adjournment of County Court—Record of Term—Construction—Mortgage for Purchase Price—Time of Purchase—Executory Contract for Sale of Land—Rights of Mortgagee in Possession After Condition Broken—Ejectment by Mortgagor—Motion to Set Aside—Discretion of Court—Ruling as Matter of Law—Remand of Case.*

An appellate court takes judicial notice of the legally appointed times for holding its own sessions and those of inferior courts whose rulings it is called upon to review. But the exact day on which the county court takes final adjournment is not fixed by law, and must be proved like any other pertinent fact.

A record of a term of county court reciting that court adjourned on May 6, 1915; that on May 8, 1915 the presiding judge directed the record of adjournment to be made as a recess to May 25, 1915; and that on May 25, 1915, court adjourned; *held* the first entry should be construed to be a mistake, corrected by the presiding judge, and the date of final adjournment was May 25, 1915.

In 1880, the plaintiff, Joseph Lapoint, who was a married man, entered
into a written agreement under seal with Stetson, then the owner
of the premises in question, whereby the latter agreed to convey
the premises to the plaintiff, upon compliance with certain con-
ditions. In 1892, Stetson deeded to plaintiff, and plaintiff gave
him a mortgage back. Thereafter plaintiff and his wife removed
from the place. In 1900, Stetson assigned plaintiff's note and
mortgage to Roby, and plaintiff gave Roby a warranty deed of
the place, not signed by his wife. Roby and his wife assigned
the note and mortgage to defendant Thomas Lapoint and gave
them a deed the description in which was defective and after
this suit was brought, gave him another deed of the property.
Both Roby and defendant Thomas Lapoint went into possession.
Defendant Thomas Lapoint before receiving his second deed con-
veyed to defendant Sage, who went into possession. On these
facts, *held*, the mortgage to Stetson was given at the time of
the purchase, which was when the contract entered into in 1880
became executed and complete by the execution and delivery of
the deed and mortgage in 1892, and, being given for the purchase
price, was superior to any right of homestead in the property.

*Held*, also, that the original contract was wholly executory, the legal
ownership remaining in Stetson, and a mere imperfect and in-
choate right passing to Lapoint.

*Held*, also, that the rights of Stetson as mortgagee passed to Roby
and from Roby to defendant Thomas Lapoint, it being immaterial
that his deed was executed after suit was brought, and defendant
Sage succeeded to the rights of the mortgagee, though he took by
deed rather than by assignment, and stands in the position of a
mortgagee in possession after condition broken, against whom
ejectment cannot be maintained by the mortgagor, or one claim-
ing in his right.

*Held*, also, a verdict should have been directed in favor of the defend-
ant Thomas Lapoint because he was wholly out of possession.

*Held*, also, the verdict for the plaintiffs against defendant Sage, was
contrary to the evidence, and his motion to set aside should have
been granted.

A motion to set aside a verdict is addressed to the discretion of the
court and it is error to rule upon it as a matter of law. The party
making the motion is legally entitled to have the court's discre-
tion exercised.

36

Although final judgment would ordinarily be rendered in Supreme
Court, under the circumstances, this case is remanded so that the
plaintiff may have opportunity to pay or tender the amount due
on the mortgage, and proceed with the case.        `

EJECTMENT.  Plea, the general issue.  Trial by jury at the
April Term, 1915, Essex County, *Miles,* J., presiding.  Verdict
for the plaintiff.  Defendant excepted.  The opinion states the
case.

*Porter, Witters & Harvey* for defendants.

*C. R. Powell, Simonds, Searles & Graves* and *Cook &
Norton* for plaintiffs.

POWERS, J.  The action is ejectment, and verdict and judg-
ment were for the plaintiffs, who are husband and wife.

At some time lin 1880, Joseph Lapoint obtained from
Alpheus Stetson, who then owned the premises in question, a
written contract under seal whereby the latter agreed to sell and
convey the same to the former upon compliance with certain
terms and conditions.  Immediately thereafter, Lapoint and his
wife moved on to the premises and established their home there,
and they continued to reside there until they moved away as
hereinafter stated.  August 13, 1892, Stetson and Joseph settled
up their affairs and agreed upon the sum of $293.32 as the
amount then due upon the place.  On that day, Stetson deeded
the place to Joseph and he gave back a mortgage thereon secur-
ing a note for the amount specified.

In August, 1899, Sarah, the wife, left the place and went to
Chicago, taking with her all her children and most of her house-
hold effects.  Her evidence tended to show that she was com-
pelled to leave her home on account of her husband's cruelty.
She never returned to occupy the place, and has not been in the
state until 1913.

Shortly after his wife left, Joseph sold or removed all of his
personal effects remaining on the premises, moved away, and
has never since resided there.  He first went to Chicago and
lived there with his wife for a time; but they could not agree
and he came back and took up his abode in New Hampshire.

On March 31, 1900, Stetson assigned the note and mortgage above mentioned to Henry Roby. And on April 7, 1900, Joseph Lapoint gave Roby a warranty deed of the place. On September 20, 1901, Roby and his wife attempted to convey the premises to Thomas Lapoint, one of the defendants, but by some mistake the description in this deed failed to include the premises here in question, and in September, 1913, after this suit was brought, the Robys gave Thomas another deed of the place containing a sufficient description. At the time the defective deed was executed, Roby transferred to Thomas the note and mortgage and he retained possession of them until they were accidentally destroyed after this suit was brought. Both Roby and Thomas went into possession of the place under their respective deeds and assignments. The defendant Sage bought of Thomas and at the time the suit was brought was in actual possession of the premises,—Thomas being wholly out of possession as the case shows.

The plaintiffs move to dismiss the exceptions on the ground that they were not seasonably filed. In support of this motion, it is urged that this Court will take judicial notice of the date on which Essex County Court finally adjourned. An appellate court takes notice of the legally appointed times for holding its own sessions and those of inferior courts whose rulings it is called upon to review. *Hancock* v. *Worcester*, 62 Vt. 106, 18 Atl. 1041. These are matters fixed by law. But the exact day on which the county court takes final adjournment is not fixed by law and must be here proved like any other pertinent fact. *Harrison* v. *Meadors,* 41 Ala. 274; *Dudley* v. *Barney,* 4 Kan. App. 122, 46 Pac. 178; *Hadley* v. *Bernero,* 97 Mo. App. 314, 71 S. W. 451; *Gilliland* v. *Sellers,* 2 Ohio St. 223; *Baker* v. *Knott,* 3 Idaho 700, 35 Pac. 172; *Felt* v. *Cook,* 31 Utah 299, 87 Pac. 1092.

Counsel agree that the record of the term at which the case was tried runs as follows:

"Essex County Court, April Term, 1915. Court opened April 27th, 1915, at 10 o'clock A. M. May 6th, 1915, at 12 o'clock and 20 minutes P. M. court adjourned without day. May 8th, 1915, I received a letter from Presiding Judge Miles directing me to make my record of last adjournment as recess to May 25th, 1915, at 9 A. M. May 25th, 1915, 11.25 A. M., court adjourned without day."

If, as the first statement of the record shows, the court actually adjourned the term on May 6, we cannot believe that a presiding judge would attempt afterwards to revive it; it is much more reasonable to infer that the original entry was a mistake, which the presiding judge discovered and had corrected to correspond with the fact. So we construe the last entry as a correction of the first and conclude that May 25 was, in fact, the day of final adjournment, and overrule the motion.

If, in the circumstances shown in the foregoing statement of facts, the Stetson mortgage was for the purchase money and given at the time of the purchase, it was superior to any right of homestead in the property. P. S. 2553. The only ground on which this superiority is questioned is that it was not given at the time of the purchase,—the plaintiffs insisting that the purchase was made back in 1880 when the original contract was executed. It is true that in one view of it such is the case. But that contract, under a recent decision of this Court, was wholly executory, the legal ownership remaining in Stetson, and a mere imperfect and inchoate right passing to Lapoint. *Waite* v. *Stanley*, 88 Vt. 407, 92 Atl. 633, L. R. A. 1916 C, 886. In the broad sense of the statute, the purchase was not made until the contract became executed and complete, and was made so by the execution and delivery of the deed and mortgage on August 13, 1892. This result accords with the manifest purpose of the statute and is in harmony with policies prevailing in other jurisdictions.

Stetson's rights as mortgagee passed to Roby, and from Roby to Thomas Lapoint under the second deed (*Collamer* v. *Langdon*, 29 Vt. 32); it being wholly immaterial that this deed was executed after suit brought (*Tucker* v. *Keller*, 4 Vt. 161). Sage, the grantee of Thomas Lapoint, succeeded to the rights of a mortgagee, though he took by deed rather than by assignment, and stands here as a mortgagee in possession after condition broken. He is entitled to the protection afforded to one so situated even though he did not expressly assert such right. His possession, therefore, was lawful, and ejectment by the mortgagor or one claiming in his right cannot be maintained against him. Newell, Eject. 111; *Woods* v. *Hilderbrand*, 46 Mo. 284, 2 Am. Rep. 513; Sedg. & W. §340; *Wing* v. *Field*, 35 Hun. (N. Y.) 617.

At the close of the evidence, Thomas Lapoint moved for a verdict. This should have been granted as he was, as we have seen, wholly out of possession. Sage did not move for a verdict, but after verdict he joined in a motion to set it aside as being against the evidence. This motion was overruled as matter of law. The motion should have been granted. The verdict was contrary to the evidence and cannot stand. This motion to set aside the verdict was addressed to the discretion of the court and the defendants were legally entitled to have that discretion exercised. To rule the question as matter of law was also error. *Lincoln* v. *C. V. Ry. Co.*, 82 Vt. 187, 72 Atl. 821, 137 Am. St. Rep. 998; *State* v. *Newell*, 71 Vt. 476, 45 Atl. 1045.

It is apparent from what has been herein said that the plaintiff can never prevail in this action against Sage as long as the mortgage is outstanding. In these circumstances, we would not ordinarily remand the case but would render final judgment here in accordance with the rule generally prevailing. 4 C. J. 1185; 2 R. C. L. 280; *Derosia* v. *Ferland*, 83 Vt. 372, 76 Atl. 153, 28 L. R. A. (N. S.) 577, 138 Am. St. Rep. 1092. But the plaintiff may want to pay or tender the amount due on the mortgage and proceed with her case; and in the circumstances we think she should be accorded that privilege. So the case will be sent back to enable her to do so.

*As to Thomas Lapoint, the judgment is reversed and judgment rendered that he recover his costs. As to Ovid Sage, the judgment is vacated, the verdict set aside, and the cause remanded. Unless the plaintiff proceeds promptly to ascertain and tender the sum due on the mortgage referred to in the opinion, let judgment be there rendered for him to recover his costs.*