[Civ. No. 67848. Second Dist., Div. Five. Dec. 21, 1983.]

Estate of SANDY SAPIN, Deceased.
LANI SAPIN POWERS, Petitioner and Appellant, v.
CRAIG P. SAPIN, as Co-executor, etc., et al., Objectors and
Respondents.

---

---

**COUNSEL**

Sheppard, Mullin, Richter & Hampton, Wesley L. Nutten III and Randolph B. Godshall for Petitioner and Appellant.

Craig P. Sapin, in pro. per., and Kenneth S. Wolf for Objectors and Respondents.

---

**OPINION**

**ASHBY, J.**—Appellant Lani Sapin Powers was the widow (since remarried) of the decedent Sandy Sapin, and respondents Craig and Kevin Sapin are decedent's children by his previous marriage. In his will, decedent devised to respondents his one-half interest in the Beverly Hills home of decedent and appellant. Appellant appeals from the probate court's denial of her petition to have decedent's half interest set aside to appellant as a declared homestead pursuant to former Probate Code sections 663 and 664.

Decedent and appellant were married in July 1975. Shortly before their marriage they purchased their Beverly Hills home for $152,500, each contributing half the down payment, taking title as tenants in common. On August 6, 1975, decedent recorded a declaration of homestead on the residence pursuant to former Civil Code sections 1260-1265. As of August 6, 1975, outstanding encumbrances on the residence (first and second trust deeds) totaled $127,450.

Decedent died November 9, 1978. At the time of death the applicable homestead exemption (former Civ. Code, § 1260, subd. 1) was $30,000. (Stats. 1976, ch. 132, § 1, p. 211.)

In his will, decedent devised to respondents, his two sons, decedent's half interest in the home, subject to a proviso that respondents not sell, transfer, dispose or hypothecate such interest unless or until appellant died, cohabited

with a man in the home, remarried, attempted to sell her interest, or ceased to use the home as her personal residence.

Appellant remarried in January 1980.

In December 1979, a partial inventory and appraisement was filed in which decedent's one-half interest in the property was appraised by the inheritance tax referee at $150,000.

On November 6, 1980, appellant filed her petition for order to set apart to her decedent's interest in the declared homestead pursuant to former Probate Code sections 663 and 664. Those sections provided that the homestead be set apart to the surviving spouse only if the homestead was returned in the inventory, or alternatively at the date the homestead was declared, "appraised at not over the amount of the homestead exemption, as provided in the Civil Code and in effect at the date of death of the decedent." (Stats. 1970, ch. 1282, § 16, p. 2329.) Otherwise, under former Probate Code section 665, the premises must be divided if they can be divided without material injury, or the court may make an order for the sale of the premises and distribution of the proceeds to the parties entitled thereto. (Stats. 1970, ch. 1282, § 17, p. 2329.)

Since the value of decedent's interest as returned in the inventory ($150,000) and the value of his interest at the time the homestead was declared (one-half of $152,500 or $76,250) exceeded the amount of the homestead exemption in effect at decedent's death ($30,000), the trial court denied appellant's petition.

■ Appellant argued that in determining the value of the homestead for the purpose of section 664, outstanding liens and encumbrances should be subtracted, and that if such encumbrances were subtracted the net value of husband's interest was less than the $30,000 exemption and therefore his homestead interest must be set apart to her. *Estate of Durham* (1951) 108 Cal.App.2d 148, 152 [238 P.2d 1057], ruled to the contrary, that the amount of a mortgage on a homestead is not to be considered in ascertaining its value for this purpose. Appellant argues that *Durham* was wrongly decided and should not be followed. We affirm, finding that *Durham* states the applicable rule.

## DISCUSSION

This case involves the survivorship feature of our former law relating to "declared" homesteads, a feature which has since been repealed on the recommendation of the California Law Revision Commission because ar-

bitrary and unjustified distinctions existed between declared homesteads and "probate" homesteads. (Stats. 1980, ch. 119, §§ 1, 7, pp. 282, 284; 15 Cal. Law Revision Com. Rep. (1980) p. 407.) Since decedent died on November 9, 1978, prior to the repeal, and under the law then in existence appellant's rights vested upon decedent's death (former Civ. Code, § 1265, and former Prob. Code, § 663; Stats. 1961, ch. 636, §§ 13, 15, pp. 1842, 1843), this case is governed by the prior law. (Cf. *Estate of Grigsby* (1982) 134 Cal.App.3d 611, 616 [184 Cal.Rptr. 886].)

Among the criticisms by the Law Revision Commission of the survivorship feature of the declared homestead law were:

1. It was unnecessary and inflexible. Protection of the surviving members of the family was better provided by the probate court in setting aside a probate homestead (Prob. Code, § 661). "By way of contrast, the fundamental purpose of the declared homestead. is to provide an exemption for the family home from claims of creditors; the survivorship function is merely incidental. It is likely that persons who declare homesteads do so primarily for the purpose of protection against creditors; the survivorship consequences of the homestead declaration may be subsidiary or unintended. Where survivorship consequences are in fact knowingly intended by the homestead declarant, they can be achieved much more simply, directly, and effectively by appropriate inter vivos instrument or by will." (15 Cal. Law Revision Com. Rep., pp. 411-412; fn. omitted.)

2. Whereas there was no limit to the value of property that could be set aside as a probate homestead, a "major limitation on the survivorship right in the declared homestead is the value of the property that may be set apart." (*Id.*, at p. 409.) Under former Probate Code sections 663 and 664, the declared homestead passed to the surviving spouse only when its appraised value was less than the amount of the homestead exemption. (*Id.* see Adams, *Homestead Legislation in California* (1978) 9 Pacific L. J. 723, 732-733.)[1]

3. Former Probate Code section 735 (also repealed pursuant to the commission's recommendation, Stats. 1980, ch. 119, § 17, p. 285; 15 Cal. Law Revision Com. Rep., pp. 409-410), provided that in the case of a declared homestead, but not a probate homestead, the estate must pay off the liens and encumbrances on the homestead. (*Estate of Huelsman* (1899) 127 Cal. 275, 277 [59 P. 776].) This gave an economically unwarranted benefit to the declared homestead, since it is now unusual for homes to be owned free and clear of encumbrances. (Adams, *supra,* 9 Pacific L. J. at p. 752.)

---

[1]The latter article was prepared for the Law Revision Commission by its consultant. (*Id.,* at p. 723.)

In this case appellant was entitled to relief under former Probate Code section 664 only if the appraised value of the homestead as returned in the inventory or as of the date the homestead was declared, was "not over the amount of the homestead exemption, as provided in the Civil Code and in effect at the date of death of the decedent." (Stats. 1970, ch. 1282, § 16, p. 2329.) It is undisputed that unless liens and encumbrances are subtracted in determining such value, appellant does not qualify under the section. *Estate of Durham, supra,* 108 Cal.App.2d at page 152, holds that for purposes of former Probate Code section 664 liens and encumbrances are not subtracted in determining the value. Appellant argues that *Durham* was wrongly decided, and that former Probate Code section 664 incorporated a "net equity" concept from the former Civil Code provisions dealing with levy of execution. This contention is without merit.

From 1872 to 1945, former Civil Code section 1260 provided that homesteads may be selected and claimed "of not exceeding $5,000 in value by any head of a family." In 1945, the statute was revised to provide that homesteads may be selected and claimed "[b]y any head of a family, of not exceeding six thousand dollars ($6,000) in actual cash value, over and above all liens and encumbrances on the property at the time of any levy of execution thereon." (Stats. 1945, ch. 789, § 9, p. 1477.) At that time former Probate Code section 664 still referred to a value of "not over five thousand dollars." (Stats. 1931, ch. 281, § 1, p. 627.) In 1947 former Probate Code sections 664 and 665 were amended to refer to an appraisal "at not over the amount of the homestead exemption." (Stats. 1947, ch. 409, §§ 1, 2, p. 1022.) In 1955, former section 664 was amended to contain the language applicable to this case, "appraised at not over the amount of the homestead exemption, as provided in the Civil Code and in effect at the death of the decedent." (Stats. 1955, ch. 848, § 1, p. 1465.)

Appellant argues that the 1947 and 1955 Probate Code amendments were intended to incorporate the net equity concept found in the Civil Code provisions, which referred to actual cash value over and above all liens and encumbrances. This argument is not persuasive.

First, the phrase "the amount of the homestead exemption" was one which had been used in other sections of the legislation in 1945 amending the applicable Civil Code provisions. As enacted in chapter 789 of the Statutes of 1945, former section 1246 required that the application of a judgment creditor for a levy of execution allege "that the value of the homestead, over and above all liens and encumbrances thereon, exceeds *the amount of the homestead exemption.*" (Italics added.) Former section 1253 was amended to require that if the land could be divided without material injury then a portion should be set off to the claimant "as will amount in

value to the homestead exemption over and above all liens and encumbrances, and the execution may be enforced against the remainder of the land." If, on the other hand, the land could not be divided, section 1254 required that it be sold if "the land claimed exceeds in value, over and above all liens and encumbrances thereon, *the amount of the homestead exemption.*" (Italics added.) Section 1255 required that at the execution sale no bid shall be received unless "it exceeds *the amount of the homestead exemption* plus the aggregate amount of all liens and encumbrances on the property." (Italics added.) Finally, former section 1256 directed the distribution of proceeds of the sale, first to the discharge of all liens and encumbrances and, second, "to the homestead claimant to *the amount of the homestead exemption.*" (Stats. 1945, ch. 789, §§ 2, 5, 6, 7, 8, pp. 1476-1477; italics added.)

Thus, when the Legislature amended the Probate Code in 1947 to refer to "the amount of the homestead exemption," it is presumed to have been using that phrase as it had previously been used in the 1945 Civil Code legislation. Had the Legislature intended the change advocated by appellant, it would have used the entire phrase "value of the homestead exemption over and above liens and encumbrances." The 1947 change in the Probate Code was simply a "type of cross reference [which] has the merit of ensuring that the Probate Code sections will, hereafter, always be consistent with section 1260 of the Civil Code, without the necessity of repeatedly amending the Probate Code whenever the Legislature sees fit to change the Civil Code section." (Note, *The Work of the 1947 Legislature* (1947) 21 So.Cal.L.Rev. 1, 17.)

Nor did the 1955 amendment intend the far-reaching effect advocated by appellant. Witkin explains that amendment this way: "In recent years the exemption has been several times increased by legislative changes. This created an uncertainty in the effect of [Civil Code section] 1260 on [Probate Code sections] 664 and 665, where a statutory homestead was recorded at a date when the exemption was set at a lower figure. In 1955 this uncertainty was eliminated, and the higher exemption assured, by amendments to [Probate Code sections] 664 and 665 referring to the amount provided in the Civil Code 'and in effect at the date of death of the decedent.'" (7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 513, p. 5933.) Thus the 1955 amendment merely clarified which exemption, date of selection versus date of death, was applicable. Had the Legislature intended to overrule *Durham,* it would have used express language, "over and above all liens and encumbrances," which had been repeatedly used in the 1945 Civil Code legislation.

Nor is there any merit to appellant's contention that her construction of former section 664 is necessary in order to equalize the position of the

homestead declarant and the surviving spouse. Assume that a living homestead declarant has a $30,000 homestead exemption, and owns a property appraised at $150,000 on which there are encumbrances of $120,000. The homestead declarant's creditors could not compel sale of the property on execution because the interests of the secured lienholders and the homestead declarant, which have first priority on the proceeds of sale, equal the full value of the property. The result is that the homestead declarant has a $30,000 equity which is protected against execution by unsecured creditors.

However, in the case of the surviving spouse of a deceased homestead declarant, former Probate Code section 735 required that the estate pay off the liens and encumbrances. (Stats. 1931, ch. 281, § 1, pp. 633-634.) If appellant's construction of former section 664 were applied, and the other funds of the estate are sufficient, appellant would wind up as owner of a $150,000 property free and clear of encumbrances instead of in a position comparable to decedent. According to the consultant to the Law Revision Commission, this is the rationale justifying the *Durham* rule, although not expressed in the *Durham* opinion itself. "Since the liens and encumbrances on the homestead are exonerated under Section 735, they are not deducted from the appraised value for the purposes of Section 664." (Adams, *supra*, 9 Pacific L. J. at p. 733 [citing *Durham*]; fn. omitted. See 15 Cal. Law Revision Com. Rep., pp. 409-410.)

Appellant argues that we should liberally construe former Probate Code section 664 to achieve the purpose of permitting appellant to remain in the home. (See *Estate of Kachigian* (1942) 20 Cal.2d 787, 791 [128 P.2d 865].) Appellant points out that there are few homes today with a gross value of less than $30,000 and that the practical effect of the *Durham* rule will be to require the property be sold and the proceeds distributed. However, we cannot rewrite the law under the guise of liberally construing it. The Law Revision Commission recognized that the former law regarding the survivorship feature of the declared homestead was of limited value and contained arbitrary distinctions which were in some respects too limiting and in other respects too generous. It was because of some of these deficiencies that the commission recommended repeal of the law and that "[t]he surviving family of any decedent should be eligible for a probate homestead regardless of the existence of a declared homestead." (15 Cal. Law Revision Com. Rep., p. 412.) The Legislature had ample opportunity to overrule the 1951 *Durham* decision but as we have seen, the 1955 amendment to former Probate Code section 664 did not by its language appear calculated to do this, and was interpreted by a leading commentator as simply clarifying the date of the applicable exemption. Revision and reform of the survivorship feature of the declared homestead law may have been long overdue, but it did not come until 1980, too late to affect appellant. We cannot reasonably

conclude, under the guise of liberal construction, that the 1947 or 1955 amendments had the intent or effect of accomplishing the change advocated by appellant.

Thus, the trial court properly applied the *Durham* rule and properly concluded that appellant was not eligible to have decedent's homestead interest set apart to her under former Probate Code section 664, since the appraised value of the property exceeded the amount of the applicable homestead exemption.

The order is affirmed.

Feinerman, P. J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 14, 1984.