## Lloyd Mercier v. Constance Partlow

[546 A.2d 787]

No. 86-408

Present: **Allen, C.J., Peck, Gibson, Dooley and Mahady, JJ.**

Opinion Filed April 8, 1988

*Marshall & Marshall*, Swanton, for Plaintiff-Appellee.

*Michael Rose*, St. Albans, for Defendant-Appellant.

**Dooley, J.** This case involves the scope of the homestead exemption established by 27 V.S.A. § 101 on property that is subject to a mortgage. Plaintiff, Lloyd Mercier, obtained three small claims judgments totaling $2,942 against defendant, Constance Partlow. Pursuant to 12 V.S.A. § 2901, these judgments became a lien on the real property of defendant once they were recorded pursuant to 12 V.S.A. § 2904. Plaintiff did record them in the land records of the Town of Swanton where defendant owned real estate. Approximately six months after the judgments were obtained, plaintiff brought an action pursuant to 12 V.S.A. § 2903(c) and V.R.C.P. 80.1 to foreclose the judgment lien and sell defendant's property. Defendant answered by alleging that the property to which plaintiff attempted to attach the judgment lien was exempt from attachment under 27 V.S.A. § 101 because it was defendant's homestead. The trial court found against defendant on

this claim because it found that the value of the property exceeded the homestead limit of $30,000 and, thus, there was non-homestead property that could be used to satisfy the debt to plaintiff. Defendant appeals alleging that the lower court misapplied the homestead limit on her property. We agree and reverse.

The relevant facts were stipulated by the parties or found without challenge by the trial court. The property on which plaintiff seeks to foreclose consists of land and a dwelling house valued at $49,000. It is owned and used by defendant as a homestead. See 27 V.S.A. § 101. The property was financed with borrowed funds from the Farmers Home Administration, and that agency took a purchase money mortgage on the property to secure the debt to it. At the time of the hearing in the trial court, the principal amount outstanding was approximately $29,000.

Under 27 V.S.A. § 101, the homestead exemption applies to the homestead "not exceeding $30,000.00 in value." Plaintiff argues that since the property is worth $19,000 more than the exemption amount, there is value that he can reach to satisfy the debt to him. Defendant argues that the $30,000 limit applies to her equity—that is, so much of the value that is not secured for the debt to the Farmers Home Administration—and since this equity does not exceed $30,000, there is nothing on which plaintiff can foreclose.

■■ We agree with defendant's position on the effect of the homestead exemption. The purpose of the exemption is to protect homeownership from loss to creditors:

> The conservation of family homes is the purpose of homestead legislation. The policy of the state is to foster families as the factors of society, and thus promote the general welfare. To save them from disintegration and secure their permanency, the legislator seeks to protect their homes from forced sales so far as it can be done without injustice to others.

R. Waples, Homestead and Exemption ch. 1, § 2, at 3 (1893). Because the homestead statutes are remedial, the statutes are to be interpreted liberally to accomplish their remedial purpose. It is apparent that the remedial purpose is fulfilled only by defendant's construction. Defendant's property, whether or not a homestead, can be reached by foreclosure to satisfy a purchase money mortgage. See *Lapoint* v. *Sage,* 90 Vt. 560, 564, 99 A. 233, 235

(1916); 27 V.S.A. § 141. In modern times, most of the homesteads have a purchase money mortgage—it is necessary to achieve homeownership in today's society. Although the homestead exemption was significantly increased in 1979 to the present $30,000 level, it is at this point significantly below the price of an average house and land in Vermont.[1] For many homeowners, especially those who have purchased in the last few years, the purchase money mortgage exceeds the homestead exemption even after quite a few years.[2] Under plaintiff's interpretation of the homestead exemption, these persons have no exemption—it lies under the purchase money mortgage but is no barrier to the collection of that mortgage from the property. We are unwilling to interpret the exemption so narrowly as to eliminate it for a large class of homeowners.

We are mindful that the rule of liberal construction does not allow us to expand the statutory exemption beyond its terms. As Judge Redfield noted in 1877, "the court [sic] are not to constitute themselves the almoners of such beneficent purpose, and distribute bounties in their *discretion . . . ." Bugbee* v. *Bemis,* 50 Vt. 216, 219 (1877) (emphasis in original). To the extent we can find an indication of legislative intent in the statutory language, it supports defendant's argument that the homestead attaches to defendant's equity and not to the full fair market value. 27 V.S.A. § 103 describes how a homestead is designated when the property is mortgaged and is subject to a levy of execution. The last sentence states: "[o]nly such portion of the mortgage as is in excess of the value of such real estate, aside from such homestead, shall rest on such homestead." *Id.* Although the language is less direct than it might be, it means that the homestead is part of the defendant's equity of redemption and not part of the value subject

---

[1] A recent study conducted for the State of Vermont Department of Housing and Community Affairs indicates that the average house price in 1985 was $60,500 (or $64,000 excluding mobile homes). Applied Economic Research, *Vermont Housing Needs Analysis Summary Report* 2 (Nov. 1986). Other sources suggest a significantly higher average price as of 1987. See *Burlington Free Press,* January 3, 1988, at 1E (average home price is $85,000).

[2] In 1986, Vermont banks made 19,514 residential mortgages providing $1,055,800,000 in financing for an average mortgage loan of $54,110. Thus, the average loan is 180% of the homestead exemption amount. See Vermont Bankers Association, *Vermont Banks* (Nov. 1987) (unpaginated report, data is for calendar year 1986).

to the mortgage unless necessary to fully cover the value of the mortgage. The statute restates and supports defendant's position.

Finally, we note that every modern decision—except a line of cases in California now overruled by statute—adopts the view that the homestead amount is part of the homeowner's equity and not part of the value subject to the mortgage. See *Ouachita Nat'l Bank* v. *Rowan*, 345 So. 2d 1014 (La. App. 1977); *Cross* v. *Commons*, 336 Mich. 665, 59 N.W.2d 41 (1953); *Sanne* v. *Sanne*, 167 Neb. 683, 94 N.W.2d 367 (1959); *Dallas Ceramic Co.* v. *Morgan*, 560 P.2d 197 (Okl. 1977); *Everett* v. *Pape Bros., Inc.*, 269 Or. 575, 525 P.2d 996 (1974); *John Hancock Mut. Life Ins. Co.* v. *Wagner*, 174 Wash. 185, 24 P.2d 420 (1933); *Eloff* v. *Riesch*, 14 Wis. 2d 519, 111 N.W.2d 578 (1961). For the California law, see *Estate of Sapin*, 150 Cal. App. 3d 20, 197 Cal. Rptr. 454 (1983); *Estate of Durham*, 108 Cal. App. 2d 148, 238 P.2d 1057 (1951). The dominant rationale is that under this construction of the homestead statute "the purpose of the homestead exemption is fulfilled instead of frustrated." *Ouachita Nat'l Bank* v. *Rowan*, 345 So. 2d at 1016.

Plaintiff raises for the first time in this Court an alternative argument to uphold the lower court judgment. He argues that the homestead exemption does not apply to a judgment lien and therefore, since his action was to enforce a judgment lien, the homestead exemption could never be a valid defense. Since plaintiff failed to raise this argument below, we do not have to consider it. See, e.g., *Hislop* v. *Duff*, 146 Vt. 310, 312, 502 A.2d 357, 358 (1985). We choose to do so, however, because it has been briefed and argued and will recur in other cases.

The homestead exemption means that the homestead is "exempt from attachment and execution" except as otherwise provided. Plaintiff points out that the judgment lien is a new security device created in 1979 "in addition to and separate from any other remedy or interest created by law or contract," 12 V.S.A. § 2902, including, plaintiff argues, writs of attachment and execution. See 12 V.S.A. §§ 2901, 2902. He notes that the same act that established the judgment lien also raised the homestead exemption amount to $30,000, yet never stated that the judgment lien was subject to the homestead exemption. See Acts of 1979, No. 67, § 3 (judgment lien), § 7 (raises homestead exemption).

While the judgment lien was new to Vermont in 1979, it is a recognized security device, in effect in many states, and uniformly

held to be subject to the homestead exemption. See Annot., 110 A.L.R. 883 (1937). There are actually two theories of interrelationship between the lien and the exemption—both refuse to give effect to the lien while the property is held and used as a homestead but one theory allows the lien to attach and lie dormant until the property is no longer held and used as a homestead. See S. Thompson, Homestead and Exemption Laws §§ 390-402, at 332-46 (1878). While our homestead exemption statute does not explicitly refer to the judgment lien, the intent was clearly to prevent creditors from reaching the debtor's homestead to the extent of the statutory amount. Thus, the Court stated in *McClary* v. *Bixby*, 36 Vt. 254 (1863), that the statute "expresses in clear terms a purpose to exempt from attachment, execution, or claim for the debts of the [debtor] his interest in the dwelling-house and lands appurtenant, occupied by him as a homestead . . . ." *Id.* at 257. In view of the liberal construction of the statute, we think the wording is sufficient for the exemption to prevent foreclosure of the lien on the homestead property. The absence of a reference to the lien can be taken as support for the proposition that only enforcement—that is, execution—of the lien is prohibited so that the lien can attach to the homestead property but lie dormant until the property is no longer held and used as a homestead. See S. Thompson, *supra*, at § 391.

Plaintiff's legislative intent argument actually supports the opposite result from that which he intends. The judgment lien was adopted as an expeditious and efficient alternative to execution. As a result, use of execution to collect a judgment against a defendant who owns real property will be rare. Thus, plaintiff's argument would mean that the legislature effectively repealed the homestead exemption law. We would be reluctant to find that this venerable debtor protection law was effectively repealed without some clear statement of legislative intent to do so. We find it impossible to so find when the legislature expanded the homestead law in the same act as that asserted as its death knell.

For the above reasons, we hold that the property on which plaintiff seeks to foreclose his judgment lien is exempt from attachment and, therefore, may not be foreclosed to satisfy his judgment lien. The judgment below must be reversed and the foreclosure complaint dismissed.

*Reversed.*