**In re Daniel E. GIRARD, Debtor.**

**Bankruptcy No. 87–00135.**

United States Bankruptcy Court,
D. Vermont.

March 31, 1989.

A. Moore, Law Office of Dennis Provoncha, Morrisville, Vt., for H.A. Manosh Co. (Manosh).

M. Wiener, Wiener & Olenick, P.C., Burlington, Vt., for D. Girard (debtor).

FRANCIS G. CONRAD, Bankruptcy Judge.

Debtor moves[1] to avoid a judicial lien[2] filed against his homestead. Manosh ob-

---

1. We have jurisdiction to hear this matter under 28 U.S.C. § 1334(b) and the general reference to this Court. The matter is a core matter under 28 U.S.C. § 157(b)(2)(K). This Memorandum Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52 as made applicable by Rules of Practice and Procedure in Bankruptcy Rule 7052.

2. Debtor actually sought to avoid three judicial liens. Two, however, were not contested. We ruled from the bench they were avoided and

jects. For cause, Manosh asserts that a homestead interest attaches as of the date of filing a bankruptcy petition but that valuation of the homestead, for purposes of determining impairment of the exemption, should be made at a later date.

Based on the memorandum of law and facts in evidence, we hold that valuation of a homestead for exemption purposes is the date of filing of the bankruptcy petition. Accordingly, we find that as of the date of Debtor's bankruptcy filing, the homestead exemption would be impaired by Manosh's judgment lien. The motion for lien avoidance will be granted.

Debtor filed a Chapter 7 petition for relief under Title 11 of the U.S.Code, 11 U.S.C. §§ 101, *et seq.*, on June 9, 1987. He listed as an asset ownership in a Vermont residence and claimed a $30,000 homestead exemption under 27 Vt.Stat.Ann. § 101. An appraisal valued the residence at $89,-000 on May 22, 1987.

Debtor also stated that the residence was subject to secured interests held by Farmers Home Administration (FmHA) in the amount of $45,407.71 plus an additional "Interest Credit Recapture." [3] Assuming the residence had been sold for the amount stated previously, the recapture amount would have been $15,689.95. Consequently, according to Debtor's valuations, FmHA possessed a secured interest in the residence valued at $61,097.66 which leaves an insufficient equity interest available for Debtor to realize his full homestead exemption.

Debtor filed a motion to amend his schedules on January 15, 1988. The only change affecting the matter *sub judice* pertains to the valuation of the residence and the

amount of the security held by FmHA. The new valuations are $110,000 for the value of the residence and $112,900 for the value of the secured interests of FmHA.

The Trustee found the case to be a "no asset" case on February 10, 1988. A notice of Intent to Abandon Property was filed by the Trustee on February 24, 1988. Subsequently on July 15, 1988, Debtor filed a motion under 11 U.S.C. § 522(f)(1) [4] to avoid three liens on the Vermont residence. The holders of two of the liens did not object and therefore their liens were avoided on August 11, 1988. [5] The remaining lien-holder (Manosh) made a timely objection to the motion. An evidentiary hearing was held on October 17, 1988 and the matter was taken under advisement.

At the October 17, 1988 hearing, both parties introduced appraisals and stipulated to their introduction without oral testimony. Debtor's exhibit "2" values the homestead as of May 22, 1987 at $89,000. Manosh's exhibits "A" and "B" value the homestead as of June 6, 1987 at $95,000. Debtor's exhibit "3" values the homestead as of June 14, 1988 at $97,000.

The parties also stipulated, for valuation purposes, that the amount of interest credit recapture due FmHA is $15,689.95.

Debtor testified during the hearing that prior to his bankruptcy he listed the homestead with a real estate broker for $89,000. He also testified on cross-examination that he didn't believe he could get $89,000, for the property. Finally, he testified, also on cross-examination, that the realtor showed the house to prospective buyers only twice in six months.

The mortgage of $45,407.71 plus the interest credit recapture of $15,689.95 totals

---

therefore, they are not considered for purposes of this decision.

**3.** In an effort to offset the low interest charged for a loan, FmHA has a right to a certain percentage of any profit a homeowner recognizes on the sale of a secured residence. The percentage of the profit is dependant on the amount of profit realized as well as the time the residence was owned by the mortgagee. The longer a mortgagee holds a residence before sale, the smaller the proportion of profit from such sale FmHA realizes.

**4.** 11 U.S.C. § 522(f) provides in pertinent part:
  [T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
  (1) a judicial lien ...

**5.** See note 2, *supra.*

$61,097.66. If we add to the $61,097.66 the maximum allowable exemption of $30,000, any valuation of the homestead below $91,-097.66 impairs the Debtor's exemption.

Manosh argues that the homestead should be valued at the date when the valuation of all interests is made for the purpose of determining impairment of the exemption. Debtor counters that valuation is as at the date of filing.

The arguments of the parties frame the issue. When is the appropriate time to value a homestead property when determining a debtor's and creditor's rights with respect to such property?

Manosh does not contest the fact that Debtor possesses a homestead interest in the residence in question. Manosh also agrees that Debtor's interest attached on the date the petition for bankruptcy was filed, June 9, 1987. Manosh asserts, however, two theories which, if one should prevail, would provide us with the grounds necessary to deny Debtor's lien avoidance motion. First, Manosh claims that, while the law is well settled on when exemptions attach, there is no clear law concerning when to value assets to determine parties interests.[6] Second, Manosh claims that Vermont's homestead exemption is not applicable to the attachment of judicial liens. The arguments are eristic, but we find them without merit.

■ The heartbeats of a Chapter 7 case flow to a determination that the claims are in property of a debtor's estate; payment will be made from non-exempt funds to those claims which have priority; and the rest will be discharged. In so doing, the foremost goal of a bankruptcy proceeding is achieved; the debtor is financially resuscitated and given a "fresh start." Before we can bestow the application of that fresh start, we must determine when that start begins. Congress has determined that the starting point is the time the Chapter 7 petition is filed. Therefore, according to 11 U.S.C. § 541, most property the debtor might obtain after that date does not become part of the estate and is not subject to the claims of pre-petition creditors.[7]

Congress has allowed a Chapter 7 debtor to avoid judgment liens which attached, pre-petition, to property in which the debtor has declared as exempt. 11 U.S.C. § 522(f) provides in pertinent part:

Notwithstanding any waiver of exemptions, *the debtor may avoid the fixing of a lien on an interest in property* to the extent that such lien impairs an exemption to which the debtor would have been entitled ... if such lien is—

(1) a judicial lien; ...

(emphasis added). The lien avoidance power is a means to enhance a fresh start.

Subsection (f) protects the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. The debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien.

House Report No. 95–595, 95th Cong., 1st Sess 362 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6318 (reprinted in *Norton Bankruptcy Code Pamphlet,* 1987–1988 Ed., pg. 355).

Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

(A) by bequest, devise, or inheritance;

(B) as a result of a property settlement agreement with the debtor' spouse, or of an interlocutory or final divorce decree; or

(C) as a beneficiary of a life insurance policy or of a death benefit plan.

However, the preceding exceptions are not applicable to the case at hand and so are not further considered.

---

6. Manosh states:

Although the law is w[e]ll settled as to when the homestead interest attaches to a property of a bankrupt, there is no apparent, clear definition of the time when valuation of the homestead and the bankrupt's equity interest should be defined for the purpose of determining amounts available to creditors and their possible impairment of exemptions.

Manosh's Memorandum, page 1.

7. The Code does allow certain post-petition property to become part of the estate according to 11 U.S.C. § 541(a)(5); which includes as estate property:

■ The critical determination under § 522(f) is whether or not a judicial lien "impairs" a debtor's interest in exempt property to which the lien is attached. Section 522(f) does not require that property subject to a debtor's exemption interests, and therefore the debtor's lien avoidance power, be part of the debtor's estate. Clearly, if the Trustee, representing all creditors, determines that property was valueless to an estate, an individual judgment lien creditor should not get a "second bite of the apple" when the property is thrown out of the estate. Had Congress intended § 522(f) to be restricted to estate property, which would have made it useless to debtors, it would have written the word "estate" before the word "property."

■ Using Debtor's valuation[8] of the homestead at the time the petition was filed results in an insufficient amount of equity remaining after the secured mortgagee's interests have been deducted. Therefore, there is no excess equity available to satisfy any judgment lien. Any lien, including Manosh's, would impair Debtor's ability to realize the full $30,000 homestead exemption allowed by Vermont law.

■ Conversely, if the time of valuation is moved forward to the present, or as Manosh suggests, moved to a date when valuation is necessary to determine respective interests, a different result may occur. The value of the homestead might increase to the extent there would be enough surplus equity over and above the mortgagor's secured interests and Debtor's exemption to satisfy Manosh's judgment lien.

Manosh asserts that although Debtor's right to claim an exemption in the homestead is determined as of the date of filing of the bankruptcy petition, "there is a great d[i]fference between deciding the date when a homestead *protection* is established and the date when the *valuation* of all interests is made for the purpose of determining impairment of the exemption."

Manosh's Memorandum, page 1 (emphasis in original). Accordingly, Manosh declares that the proper time for valuation of property with respect to Debtor's lien avoidance powers should be either at the time a motion is filed to avoid the lien or, in fact, not until the residence is sold at some undetermined future date. "[T]he lien of H.A. Manosh Co. should be allowed to harmlessly float until the time of sale." Manosh's Memorandum, page 4. Manosh states that according to 11 U.S.C. § 522(f),[9] Debtor may only avoid so much of a lien as would impair an exemption, and adds further that, "[u]ntil the homestead is actually sold, there is no impairment to the debtor's $30,000 homestead interest." Manosh's Memorandum, page 1.

In support of that argument, Manosh asserts if his judgment lien is avoided "while at the same time allowing the debtor to retain the property, the Court is then allowing debtor to be free of a debt that was not threatening his homestead because there was no forced sale while at the same time his equity increases because he does not have to sell his home." *Id.* page 2. We do not agree with this position.

Manosh's fear that Debtor will retain an interest in the exempt property while being free of debt is precisely the purpose behind homestead exemptions and Chapter 7 filings. The cases are legion in support of pinning the point of valuation of property with respect to determining a debtor's ability to claim an exemption, as well as the rights of the Trustee and creditors, to the time of the filing of the bankruptcy petition. For example *In re Tanner* stated:

The assets of the Debtor are determined at time of filing. Apart from allowable exemptions, the remainder of the Debtor's assets are distributed to his creditors. The Debtor receives a discharge and a new beginning. Property acquired afterward is not subject to claims of prepetition creditors. *Appreciation of property or an increase of equity own-*

---

8. We find, after hearing testimony and reviewing the facts presented, that the value of the residence as of the date the petition was filed was $89,000.

9. *Supra,* note 4.

*ership by the reduction of an outstanding mortgage are examples of after acquired property which are attributable to the Debtor's post-bankruptcy efforts.* Tanner v. Finance America Consumer Discount Company (In re Tanner), 14 B.R. 933, 936, 5 C.B.C.2d 503, 8 B.C.D. 347 (Bkrtcy.W.D.Pa.1981) (emphasis added).[10] See also, *In re Dvoroznak,* 38 B.R. 178, CCH BLR, paragraph 69802 (Bkrtcy.E.D.N. Y.1984) ("[T]he appropriate focus for the valuation of exempt property is as of the filing of the petition."); *Rappaport v. Commercial Banking Corporation (In re Rappaport),* 19 B.R. 971, 6 C.B.C.2d 749, 753, CCH BLR, paragraph 68734 (Bkrtcy.E. D.Pa.1982) ("[T]he value of the debtor's property for the purpose of deciding whether a lien is avoidable under § 522(f) of the Code should be determined as of the date of the filing of the debtor's petition."); *Salamone v. Bank of Commerce (In re Salamone),* 46 B.R. 19, 46 B. 12 C.B.C.2d 517, 519 (Bkrtcy.E.D.N.Y.1984) ("It is well-settled that in a chapter 7 case ... the appropriate time focus for valuation of the debtor's equity for purposes of a section 522(f) lien avoidance proceeding is the date on which the petition was filed.").

*Tanner* likened a creditor's rights under the bankruptcy law to those of a creditor whose interests lie in property subject to a forced sale as of the date of filing. Under such a scenario, a judgment lien holder would only obtain satisfaction to the extent that equity existed in the property over and above what was claimed by prior secured creditors and the debtor's exempted portion. The creditor would have no recourse against the new owner if no surplus existed. "The [Creditor's] argument requires attributing to Congress an intent to benefit the [judgment lien] holder more under a bankruptcy proceeding than under a nonbankruptcy forced sale. Clearly that is not consistent with the intent of Congress in providing for Debtor 'relief' under the Bankruptcy Code." *Id.* at 937.

The finality of determining interests and values in a debtor's property, which is required to liquidate an estate, pay creditors and grant a debtor discharge, could never be achieved if Manosh's "float" argument was meritorious. Further, exemptions would be void of meaning if all parties were allowed to keep their interest in exempt property as if a bankruptcy proceeding had never occurred.

■ Manosh's second ground for opposing Debtor's exercise of § 522(f) is based upon a theory that the Vermont homestead exemption does not apply to judgment liens. Manosh cites *Mercier v. Partlow,* 149 Vt. 523, 546 A.2d 787 (1988) in support of that proposition. We find that a fair reading of *Mercier* case does not support such a conclusion.

As Manosh points out, *Mercier* was decided purely on State law with no regard for bankruptcy or § 522(f)(1). We find, however, that the raised issue may be settled without a discussion of the Supremacy clause and a debtor's rights under Federal bankruptcy law.

The *Mercier* Court held that a reading of Vermont law which allowed judgment liens to attach to property and "float" until they were transferred or ceased to be homesteads "would mean that the legislature effectively repealed the homestead exemption law.... We find it impossible to so find when the legislature expanded the homestead law in the same act as [is] asserted as its death knell." *Id.* at 527, 546 A.2d 787. The *Mercier* Court also held "that the property on which plaintiff seeks to foreclose his judgment lien *is exempt from attachment." Id.* at 527, 546 A.2d 787. (emphasis added).

Moreover, *Mercier* is factually on point because we find that Debtor's homestead is worth $89,000. In *Mercier,* the judgment debtor had property worth $49,000, encumbered by a mortgage of $29,000. The Court, in reversing the lower Court, agreed with the judgment debtor's position that since her equity did not exceed $30,000, there was nothing on which the judgment creditor could foreclose.

---

**10.** *Tanner* was actually addressing the rights of an under-secured mortgagor in relation to a debtor's avoiding powers under 11 U.S.C. § 506(d). In regard to the rights of the parties presented here, however, the analysis is identical.

In light of the forgoing statements by Vermont's highest Court, it is apparent that the State's homestead exemption law does encompass protection against the attachment of judicial liens on exempt property. Rather than Manosh's argument that *Mercier* is antagonistic to § 522(f)(1), we hold that *Mercier* parallels the result demanded by § 522(f)(1).

The credible evidence allows us to conclude that the value of the Debtor's homestead at the date of filing is $89,000. We have several reasons for our finding. First, the property was listed for sale prior to the bankruptcy at $89,000. No rational person is going to list property below market unless there is a reason to sell the property fast. Second, Debtor testified to, and the appraisals show, the house needed work—work which Debtor later performed. Third, the increase in value during 1988, shown on the appraisals submitted by both parties, substantiates in our mind that a value of $89,000 in 1987 is not unreasonable.

Because the appropriate time to value debtor's exempt property is as of the filing of the bankruptcy petition and at that time there was no surplus equity in the property in question, we find the lien of H. Manosh Co. impairs Debtor's homestead exemption.

An appropriate Order will be entered.