## STATE OF VERMONT
## RUTLAND COUNTY

| | | |
|---|---|---|
| TD BANKNORTH, N.A. | ) | |
| | ) | **Rutland Superior Court** |
| v. | ) | **Docket No. 2-1-07 Rdcv** |
| | ) | |
| JEAN A. LAVICTOIRE, | ) | |
| RONALD J. LAVICTOIRE, | ) | |
| THE CLARENDON TRUST, | ) | |
| and JACK BOWEN, Individually | ) | |
| and as Trustee of the Clarendon Trust | ) | |

CONFORMED COPY
RUTLAND SUPERIOR COURT

AUG 27 2008

## DECISION
### Motion for Judgment of Strict Foreclosure:
### Homestead Exemption Amount

Plaintiff TD Banknorth, N.A. obtained a civil judgment against defendants Jean LaVictoire and Ronald LaVictoire, and seeks payment through strict foreclosure against property owned by Defendants as joint tenants with a right of survivorship. Ronald is the adult son of Jean. Both reside in the same dwelling on the subject property, and each claims a homestead exemption in the amount of $75,000 in response to Plaintiff's motion for strict foreclosure. The present question before the court is whether Ronald and Jean are each entitled to assert an individual homestead exemption on the same dwelling, thus resulting in a total exemption of $150,000, or are limited to a combined single homestead exemption of $75,000.

The United States Bankruptcy Court for the District of Vermont has held that the Vermont homestead statute authorizes one exemption per homestead, and that joint tenants are limited to claiming that portion of the exemption that corresponds to his or her proportionate ownership interest. *In re Norton*, 327 B.R. 193, 197 (Bankr. D. Vt. 2005). Plaintiff has requested that this court apply such reasoning and limit Defendants to one $75,000 homestead exemption.

Defendants argue that the Vermont homestead statutes provide a full individual exemption to each "natural person" who keeps a dwelling as a homestead, and that as two owners, they should be able to "stack" two individual exemptions of $75,000 each for a total exemption of $150,000. Defendants contend that the Bankruptcy Court's reasoning in *Norton* should not be followed because it relied heavily on a federal district court case interpreting the Vermont homestead exemption in relation to a husband and wife who owned as tenants by the entirety. See *D'Avignon v. Palmisano*, 34 B.R. 796, 800 (D. Vt. 1982) (concluding that the homestead statute allows only one exemption to a husband and wife who lived together in the same family home).

1

The issue presented is a matter of first impression under Vermont state law, and this court must undertake its own interpretation of the state homestead exemption, 27 V.S.A. § 101. While respect is due to decisions of federal courts applying Vermont law, and well-reasoned federal court decisions may have persuasive analytic value, it is the responsibility of state courts to interpret state law.

Oral argument was heard on June 17, 2008. Plaintiff was represented by Andre D. Bouffard, Esq. Defendants Ronald LaVictoire and Jean LaVictoire were present, and were represented by attorney Karl C. Anderson, Esq.

The homestead exemption is part of a remedial statutory scheme designed to preserve families from disintegration by protecting family home ownership from loss to creditors. *Estate of Girard v. Laird*, 159 Vt. 508, 510 (1993). Broadly speaking, the homestead statutes provide an exemption from attachment or execution by creditors against the homestead, 27 V.S.A. § 101, provide for the automatic passing of the homestead to the surviving spouse outside the reach of the creditors of the deceased, *id.* § 105, and restrict unilateral conveyances of the homestead without the consent of the spouse, *id.* § 141. This case involves the exemption from attachment or execution, which is set forth in 27 V.S.A. § 101 as follows:

> The homestead of a natural person consisting of a dwelling house, outbuildings and the land used in connection therewith, not exceeding $75,000.00 in value, and owned and used or kept by such person as a homestead together with the rents, issues, profits and products thereof, shall be exempt from attachment and execution except as hereinafter provided.

The central question in this case is whether the above language affords a full exemption in the amount of $75,000 to every individual "natural person" whose ownership interest in the dwelling house is partial, or whether the statute instead provides one exemption per homestead. When construing a statute, the court's role is to discern and implement the intent of the Legislature by looking to the "whole of the statute and every part of it, its subject matter, the effect and consequences, and the reason and spirit of the law." *In re P.S.*, 167 Vt. 63, 70 (1997).

When the homestead statutes were first enacted in 1849, the exemption statute provided in pertinent part as follows:

> The homestead of every house-keeper or head of a family, residing in this State, to the value of five hundred dollars,— such homestead consisting of a dwelling house, out- buildings and lands appurtenant, occupied by such person as a homestead,—and the yearly products thereof, shall be exempt from attachment and execution . . . .

1849, No. 20, § 1.

2

The terms "housekeeper" and "head of a family" made it relatively clear that the exemption could only be claimed by a specific family member—ordinarily, the husband—on behalf of the family. This strongly suggests that only one exemption per family homestead was allowed, and that the exemption was meant to provide for the family as a unit, rather than individual persons. Early decisions supported this interpretation by explaining that the purpose of the exemption was "to secure to each housekeeper or head of a family a house for himself and his family." *Keyes v. Hill*, 30 Vt. 759, 766 (1858).

The terms "housekeeper" and "head of a family" caused practical problems in at least two respects. First, the terms made it difficult to determine whether claimants in variously structured family circumstances qualified as the "housekeeper" or the "head of a family" for purposes of claiming the exemption. See George L. Haskins, *Homestead Exemptions*, 63 Harv. L. Rev. 1289, 1293-94 (1950) (explaining that terms like "housekeeper" and "head of a family" created "considerable confusion" when identifying permissible claimants under state homestead exemptions).

For example, in *Pierce v. Kusic*, the Vermont Supreme Court was required to determine whether a widower with no minor children was a "housekeeper" such that his homestead was exempt from attachment. 56 Vt. 418, 419–20 (1883) (answering in the affirmative). Similarly, in *Hyser v. Mansfield*, the Court was required to determine whether an unmarried, adult man who lived with his mother was the "head of the family" for purposes of claiming the exemption on a dwelling under construction. 72 Vt. 71, 72–73 (1899) (answering again in the affirmative).

Second, prior to 1921, women were not eligible to claim the homestead exemption as "housekeepers" or the "head of a family." The Legislature sought to resolve this problem in 1921 by replacing the terms "housekeeper" and "head of a family" with the term "natural person." 1921, No. 74, § 1. This amendment was part of a general revision of the homestead statutes which substituted gender-neutral language where appropriate—such as adding "his or her," or "widow or surviving husband"—and thereby sought to apply the homestead statutes evenly to men and women.[1] See *id.*, §§ 1–16.

Aside from the replacement of the terms "housekeeper" and "head of a family" with the term "natural person," and gender-neutral substitutions, there were no other

---

[1] The 1921 amendments followed closely on the heels of the passage of the Nineteenth Amendment to the United States Constitution, which prohibited denying any citizen the right to vote on the basis of sex. The 1921 amendments to the homestead statutes were passed over the veto of Governor Hartness, who had thought it "unwise to try to put through any satisfactory legislation aimed to equalize property rights and obligations of men and women." See 1921 Vt. Journal of the Senate 221–27 (amending language of homestead statutes to include gender-neutral language); *id.* at 404 (stating governor's veto message); *id.* at 529, 572 (passage by both houses over the governor's veto). Governor Hartness went on to say that "[s]ince the right of suffrage has been granted to women there has not been sufficient time to find a satisfactory basis. Out of fairness to women we should defer such legislation to the 1923 session." *Id.* at 404.

3

changes to the homestead statutes in 1921, and there have been no other substantive changes to the homestead statute since 1849 except for the dollar value of the exemption, which has been adjusted upward from time to time.

In light of the background and context explained above, the court interprets the 1921 amendments as clarifying that the homestead exemption may be claimed by a "natural person," meaning a man or a woman, without the need to determine whether the claimant was a housekeeper or the head of a family. The result was a measure of protection of a family home from creditors regardless of gender or status within the family. The use of the term "natural person" also made clear that the exemption was available only to natural persons, as opposed to corporations or other legal entities. Cf. D'Avignon, 34 B.R. at 800 (interpreting "natural person" as a term of classification).

Modern cases continue to discuss the homestead exemption in terms of preserving the family home. See Mercier v. Partlow, 149 Vt. 523, 524 (1988) (explaining that "[t]he conservation of family homes is the purpose of homestead legislation") (citation omitted); see also Weale v. Lund, 2006 VT 66, ¶ 4, 180 Vt. 552 (mem.) ("Since 1849, the Vermont Legislature has provided an exemption from attachment and execution for family homesteads against certain debts.").

Interpreting the statute as providing one exemption per homestead makes sense in the context of the homestead statutes as a whole. The term "homestead" describes one physical place: a dwelling house, its outbuildings, and the surrounding land. 27 V.S.A. § 101. It is the physical "homestead" which is passed to the surviving spouse without being subjected to the debts of the deceased, id., § 105, and it is the physical "homestead" which cannot be conveyed without the consent of the spouse, id., § 141. When a creditor seeks attachment and the value of the homestead exceeds the amount of the exemption, the statutes permit the claimant to identify the portion of the homestead to be protected. Id., § 102.

Furthermore, the Legislature's periodic adjustments to the value of the homestead exemption are roughly geared towards "the price of an average house and land in Vermont." See Mercier, 149 Vt. at 525 (noting that the amount of the exemption was then below the average home price). Each of these provisions reflects a property-based conception of the homestead: the purpose of the exemption is to protect the dwelling as a place to live. Although it is a protection designed to benefit people, it applies to the dwelling used for a home.

Defendants' interpretation of the homestead exemption as being "person-based" would produce consequences that are not consistent with legislative purpose. As an illustration, consider a family of four that lives together in the same house, and consists of an unmarried couple and two children, all of whom are liable on a judgment. (Assume that the two children are at least 18 and living at home). Under the interpretation advanced by Defendants, if the family homestead were owned by one parent, the family would be entitled to one $75,000 exemption. If the same family homestead were owned by both parents as joint tenants, the family would be entitled to claim two exemptions

4

totaling $150,000. If the family homestead were instead owned by all four family members as joint tenants, the family would be entitled to four exemptions totaling $300,000. In each of these situations, the relevant circumstances are the same: the family lives together in one house. It does not make sense for different families living under identical circumstances to have access to widely different exemption amounts based on the status of ownership in the home, which is subject to manipulation.

The LaVictoires have further argued that they should have two exemptions because they are two generations who live together under the same roof, and thus are two different families. There is nothing to suggest, however, that they do not live together as a family unit. Moreover, this proposed distinction would be difficult to apply when an unmarried, cohabitating couple reside together in the same dwelling as joint tenants: how should the court distinguish between families and housemates, and why should the same house be exempt up to $75,000 if occupied by a whole family, but exempt up to $150,000 if occupied by two unmarried joint tenants? This interpretation would place the court back into the late 19th-century days of determining whether an individual is the "head of a family" for purposes of claiming the exemption. Interpreting the statute as providing one exemption per homestead, regardless of family status, avoids the need for courts and families to venture into this thicket.

The cases relied on by Defendants are not in conflict with this result. *Danforth v. Beattie* supports the interpretation that the statute allows one exemption per homestead. In that case, two brothers owned thirty acres as tenants in common, but each brother lived in their own dwelling house on the property along with their respective families. See 43 Vt. 138, 142 (1870) (allowing each brother to assert a homestead exemption). The significant difference between *Danforth* and the present case is that each family had their own respective dwelling, whereas in this case there is only one dwelling. The *Danforth* court emphasized the significance of the dwelling house—rather than family status or property ownership—as the source of the homestead right.

In *McElroy v. Bixby,* a widow succeeded in obtaining a homestead interest for herself and her children in addition to a dower interest in her deceased husband's one-half interest in the family home in response to a bank's foreclosure based on a debt of the husband. 36 Vt. 254, 255 (1863). The circumstances were unlike those in this case, in which the issue is the amount of exemption available to a mother and son in a foreclosure against their jointly owned homestead property during their lifetime.

To the extent that Defendants argue that the amount of the homestead exemption is insufficient to protect their home, the task of updating the exemption amount in keeping with current economic circumstances is for the Legislature, and this court has no authority to amend specific provisions of legislation. See *Mercier,* 149 Vt. at 525.

For the reasons stated above, the court concludes that Defendants are limited to one exemption for the preservation of their joint homestead.

5

## ORDER

For the foregoing reasons,

1)        Defendants are limited to one homestead exemption in the amount of $75,000, and

2)        Within two weeks, the attorneys shall advise the court of the amount of time needed for a hearing to determine the value of the property, which is the next step in addressing the pending motion for strict foreclosure. Once the value of the property is determined, Defendants will be given a deadline for making an election under 27 V.S.A. § 183.

Dated at Rutland, Vermont this 26th day of August, 2008.

Hon. Mary Miles Teachout
Presiding Judge

6