## Joseph S. Pearson v. Darlene J. Pearson

[726 A.2d 71]

No. 97-102

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed January 29, 1999

*Robert R. Bent* of *Zuccaro, Willis and Bent*, St. Johnsbury, for Plaintiff-Appellee.

*Thomas R. Paul* of *Paul and Paul*, St. Johnsbury, for Defendant-Appellant.

**Amestoy, C.J.** Defendant mother challenges the Caledonia Family Court's final divorce order awarding to plaintiff father sole parental rights and responsibilities of the parties' son, Justin. Mother argues

that the court erred in basing its award on the assumption that father would establish a household in Waterford, Vermont, and in defining a failure to do so as a change in circumstances for the purpose of assuming jurisdiction in a future modification proceeding. Mother also argues that in determining parental rights and responsibilities, the court erred in emphasizing the parties' conduct immediately following their separation and while mother was training for a new job and that the court erred when it did not order any shared parental rights and responsibilities. Further, she argues that if we remand the parental rights and responsibilities award, the court's award of $15,000 to father must likewise be reconsidered, and that the court's imposition of a $15,000 lien on mother's home violates the homestead exemption pursuant to 27 V.S.A. § 101. We vacate and remand the family court's award of sole parental rights and responsibilities and the division of marital property.

The family court found, and the parties do not challenge, the following facts. The parties were married in June of 1990. They resided in a Lyndonville home that mother purchased before the marriage. Justin was born in February of 1992. The parties separated in June of 1995 when father moved out of the Lyndonville residence and into his mother and stepfather's home in Lancaster, New Hampshire. The final divorce order issued on February 14, 1997. The court found that both parents were fully able to exercise parental rights and responsibilities over Justin. Based in part on its finding that father intended to follow through on the parties' formerly shared plan to move to Waterford in order to enroll Justin in the school system there, the court awarded father sole parental rights and responsibilities. In its order, the court stated that if father failed to move to Waterford within a prescribed time period, it would consider that failure a substantial change of circumstances sufficient to warrant court review of the award.

## I.

We first address mother's challenge to the court's order defining a change of circumstances for the purpose of assuming jurisdiction in a future modification proceeding. Mother contends that the order contravenes our decision in *Gazo v. Gazo*, 166 Vt. 434, 697 A.2d 342 (1997), in which we held that the family court may not predetermine what will constitute a substantial change in circumstances sufficient to confer family court jurisdiction in a future modification proceeding. In *Gazo*, we addressed for the first time whether, as a general matter,

a divorce order can determine what will constitute a change of circumstances in the future. See *id.* at 440-42, 697 A.2d at 345-46. To answer this question, we examined our decision in *deBeaumont v. Goodrich*, 162 Vt. 91, 644 A.2d 843 (1994), in which we enforced a provision of a family court order specifying that a move of more than fifty miles from either party's preexisting home would constitute a change of circumstances such that the court could reconsider the parental rights and responsibilities award. We explained in *Gazo* that we enforced the *deBeaumont* provision for two reasons: first, the order set a reasonable benchmark to determine changed circumstances; and, second, the order was based on the parties' stipulation that a change in their living arrangements would have an impact on a co-parenting situation. See *Gazo*, 166 Vt. at 440, 697 A.2d at 345 (citing *deBeaumont*, 162 Vt. at 96, 644 A.2d at 846). We held in *Gazo* that where neither of the *deBeaumont* conditions is present, the family court cannot predetermine a substantial change in circumstances with a court order. See *id.* at 440-41, 697 A.2d at 345.

In the instant case, the family court ordered that if father did not move to Waterford two weeks prior to the start of the 1997-1998 Waterford school year, "then the court would consider that [failure to move] a real, substantial, and unanticipated change of circumstances that would justify court review of parental rights and responsibilities."[1] The court's order was not based on a stipulation of the parties that established their expectations about their living arrangement nor the effect of a change of those arrangements on the child. Nor can we conclude that the court established a reasonable benchmark to determine changed circumstances when it imposed a deadline by which father was to accomplish a vague and uncertain plan to move. By defining in advance what would constitute a change in circumstances sufficient to assume family court jurisdiction absent either of the *deBeaumont* factors, the court crafted an order that did precisely what we determined in *Gazo* to be an improper restriction on parents' legal and physical rights and responsibilities for their children. This retention of future jurisdiction by the family court constitutes clear error under the rule in *Gazo*.

We next address the propriety of the court's assumption that father would move to Waterford, rather than basing its decision on the

---

[1] We acknowledge that our decision in *Gazo* did not issue until several months after the family court entered its judgment. Under Vermont law, however, a change in law will be given effect while a case is on direct review, except in extraordinary cases. See *State v. Styles*, 166 Vt. 615, 616, 693 A.2d 734, 735 (1997) (mem.).

current living arrangements of the parties. Father argues that the anticipated move to Waterford was not the determinative factor for the court when making its award of parental rights and responsibilities. He contends that the court's findings indicate that, even disregarding his intended relocation, he is better suited to assume primary care of Justin, and, therefore, any error made by the court is harmless. Mother argues that the proposed move was a critical factor for the court in awarding father custody.

The court clearly premised its custody determination on its assumption that father would move to Waterford. Indeed, the court stated that "[i]n making this decision, the court is taking into account [father's] stated plan to establish a household of his own in the Waterford school district." Moreover, the court's retention of jurisdiction in the event the move did not take place, although error, also demonstrates the significance of the proposed move on the court's award. We agree with mother that the court placed a significant emphasis on father's relocation in making its award.

Although in *Gazo* we rejected the family court's preestablished definition of a change of circumstances, we recognized the difficult task of deciding an award of parental rights and responsibilities, particularly where both parents are almost equally situated in terms of the factors set forth in 15 V.S.A. § 665. See *Gazo*, 166 Vt. at 441, 697 A.2d at 346. We acknowledged that in those circumstances the parties' proposed residences can become a dominant factor in the court's decision, and we instructed the court to give the parties the choice of specifying the residences upon which it should base its custody award. See *id.* at 441-42, 697 A.2d at 346. Accordingly, in *Gazo*, plaintiff had the option of telling the court either that she would move, so that any later relocation by her consistent with the proposed relocation would be anticipated, or, that she had made no firm decision to move, so that any later relocation by her would be unanticipated. See *id.*

■ Here the court found that father planned to move to Waterford, but it also acknowledged the uncertainty of the plan and its contingency upon father's financial circumstances. Rather than "giv[ing] plaintiff the choice of specifying the facts upon which the court should base its custody decision," *id.*, the court imposed on father a deadline by which he was to accomplish what was merely an indefinite ambition to move. Because the court issued the decision without the benefit of our decision in *Gazo*, its assumption that father would move was not the result of the type of affirmative choice on

father's part that we suggested to family courts in *Gazo*. Because we hold that the court order contravenes our decision in *Gazo*, and that the court's error was not harmless, we vacate the award of parental rights and responsibilities of the family court and remand for proceedings not inconsistent with this opinion.[2]

## II.

In light of our decision vacating the court's parental rights and responsibilities award, the remaining parental rights and responsibilities issues mother raises need not be decided. Because they may arise again on remand, however, we address them below.

Mother contends that in deciding parental rights and responsibilities, the court erred in emphasizing the parties' post-separation conduct. She contends that the court, in contravention of our mandate in *Nickerson v. Nickerson*, 158 Vt. 85, 605 A.2d 1331 (1992), focused on the fact that father provided primary care for Justin after the parties separated. In *Nickerson*, we held that, when evaluating the best interests of the child, the inquiry "should focus on all relevant periods of the child's life," and not solely on the pre- or post-separation periods. *Id.* at 91, 605 A.2d at 1334. In that case, we reversed the trial court's custody determination for "apparently accept[ing] a per se rule that the parent with physical custody at the time of the divorce hearing is the primary-care-provider." *Id.* We declined "to excerpt any period from the child's life in determining who, out of two competing parents, has provided the nurturing that would make the parent the primary-care-provider." *Id.*

 Here, however, in making its custody determination, the court properly considered both the pre- and post-separation periods. Although it considered mother's behavior during the post-separation period, it also found that father's role as active primary care giver *before* the separation tipped the scale in his favor. In *Nickerson*, we

---

[2] At oral argument, counsel represented that father has not moved to Waterford. Because father did not relocate by the deadline imposed by the court, prior to the oral argument on this appeal, mother filed a motion in family court to modify the award of parental rights and responsibilities based on the order's assumption of future jurisdiction. Although the family court's decision on the motion was not made part of the record before us, counsel represented that the court denied the motion. That decision was not appealed. This issue, however, is not currently before us, and we make no determination as to the effect of the denial. Nor do we consider father's failure to relocate to Waterford. See V.R.A.P. 10(a) (only original papers and exhibits filed in trial court, transcript of proceedings, and certified copy of docket entries shall constitute record on appeal).

were concerned primarily with discouraging primary-care providers wishing to leave the home from uprooting children from the marital residence solely to remain, in the view of the court, the primary-care provider. See *id.* at 90, 605 A.2d at 1334. Here the court considered many factors, only one of which was mother's conduct following the parties' separation; the court did not apply the per se rule we disapproved of in *Nickerson.*

Mother also contends that in awarding sole parental rights and responsibilities to father, the court gave undue weight to the period from January 1995 through May 1995, during which she was training for a new job. She argues that the court's emphasis on her behavior during that time is contrary to our decision in *Johnson v. Johnson,* 163 Vt. 491, 659 A.2d 1149 (1995). She contends that *Johnson* stands for the proposition that the court should not focus on negative incidents involving the mother in custody determinations and instead should provide an even-handed analysis of the statutory factors enumerated in 15 V.S.A. § 665(b).

In *Johnson,* we expressed concern where the family court "focused more on a few negative incidents involving the mother than on the general parenting skills of the parties." *Id.* at 495-96, 659 A.2d at 1152. We also recognized that testimony concerning the mother's conduct on those occasions had "at least some relevance to determining the quality of her parenting skills," but we noted that "evidence concerning each parent's day-to-day relationship with the child would be far more relevant." *Id.* at 496, 659 A.2d at 1152. Here, the court determined that, although both parents have the ability and disposition to meet Justin's present and future developmental needs, see 15 V.S.A. § 665(b)(3), father is slightly better able to do so. This determination was based in part on mother's conduct during the period from January 1995 through May 1995. Yet the family court also considered individually each of the other statutory factors enumerated in 15 V.S.A. § 665(b) in making its ultimate custody determination. See *Johnson,* 163 Vt. at 496, 659 A.2d at 1152 (affirmance generally appropriate in such circumstances given wide discretion court has in custody matters). There was no error.

Mother contends that the court erred in awarding sole parental rights and responsibilities to father instead of awarding father primary parental rights and responsibilities with the sharing of some rights and responsibilities between the parties. Mother claims that the court, in finding the parents incapable of effective communi-

cation, "extrapolated the conflict over schedule changes to all other issues affecting Justin's life." Indeed, the court did find that the parties had tremendous difficulty communicating about Justin's schedule; however, it also concluded generally that the parties could not communicate, cooperate or make joint decisions well enough to share parental rights and responsibilities. While we have held that circumstances may support the reservation of a specific, discrete area of parental responsibility for the noncustodial parent, see *Shea v. Metcalf*, 167 Vt. 494, 501, 712 A.2d 887, 891 (1998) (affirming such award of responsibility for school and health care decisions), "family courts have broad discretion to craft parental rights and responsibilities orders that serve the best interests of children." *Cabot v. Cabot*, 166 Vt. 485, 495, 697 A.2d 644, 651 (1997). In the instant case, the court found that the "sharing of decisionmaking between the parents is *wholly unsatisfactory*, and that it is in Justin's interest for the court to establish the stability of having one parent exercise sole legal and physical parental rights and responsibilities." (Emphasis added.) We have reiterated that "[t]he trial court has broad discretion in a custody matter, and we must affirm unless the discretion is 'erroneously exercised, or was exercised upon unfounded considerations or to an extent clearly unreasonable in light of the evidence.'" *Myott v. Myott*, 149 Vt. 573, 578, 547 A.2d 1336, 1339-40 (1988) (quoting *Jensen v. Jensen*, 141 Vt. 580, 581-82, 450 A.2d 1155, 1156 (1982)). The family court did not exercise its discretion erroneously in deciding not to award any shared parental rights and responsibilities.

### III.

We address next mother's argument that if we remand the court's custody determination, we must likewise remand the court's $15,000 marital property settlement to father. Mother argues that this amount was inextricably related to the court's award to father of sole parental rights and responsibilities and cannot be justified independent of that award. We agree.

When dividing marital property, the family court is guided by 15 V.S.A. § 751(b), which provides a nonexhaustive list of twelve factors that may be considered. The court analyzed each of the twelve factors in making its award, and, although the court considered the financial contributions father made to improve the property and pay the mortgage, as well as the labor he exerted, it also underscored the need for father to have sufficient equity to establish a home for Justin

and him. Indeed, in its conclusions of law, the court stated that "[s]ince the court has decided that Plaintiff shall have sole legal and physical parental rights and responsibilities for the parties' child, it is important that Plaintiff receive sufficient equity to invest in developing a residence for himself and Justin." Although the trial court has wide discretion in dividing marital property, see *Johnson v. Johnson*, 155 Vt. 36, 43, 580 A.2d 503, 506 (1990), in light of our decision to vacate the parental rights and responsibilities award, a significant basis on which the court made its property division no longer exists. Because we conclude that the court's division of marital property rested in large part on its concern that father have sufficient equity to establish a residence with Justin, we vacate the property division and remand the issue to the family court.

Finally, although not necessary due to our decision vacating the marital property division, we address mother's contention that the court's imposition of a $15,000 lien on her real estate, which the court determined to have a fair market value of $40,000, must be vacated in light of 27 V.S.A. § 101. This section exempts from judicial attachment or execution "[t]he homestead of a natural person . . . not exceeding $75,000.00 in value." Although the purpose of § 101 is "to protect homeownership from loss to creditors," *Mercier v. Partlow*, 149 Vt. 523, 524, 546 A.2d 787, 788 (1988), the statute governing property settlement in divorce proceedings explicitly makes "[a]ll property owned by either or both of the parties" subject to the jurisdiction of the court, which must "equitably divide" it. 15 V.S.A. § 751(a). Title 15, § 754 then establishes that when a copy of the judgment is recorded in the land records of the town where the real estate is located, it "shall be effective to convey or encumber the real estate in accordance with the terms of the judgment, as if the judgment were a deed." 15 V.S.A. § 754.

█ "In construing conflicting statutes that deal with the same subject matter, the more specific provision controls over the more general one." *Stevenson v. Capital Fire Mut. Aid Sys., Inc.*, 163 Vt. 623, 625, 661 A.2d 86, 88 (1995) (mem.) In broad terms, 27 V.S.A. § 101 provides for the protection of homeownership from loss to creditors. See *Mercier*, 149 Vt. at 524, 546 A.2d at 788. The statutory authority to "encumber the real estate in accordance with the terms of the [divorce] judgment" conveyed by 15 V.S.A. § 754 provides the court with the power to place a lien on the marital home. If the homestead exemption were to apply to the division of marital property, the language of § 751, that "[a]ll property owned by either

or both of the parties, however and whenever acquired, shall be subject to the jurisdiction of the court" for division, regardless of ownership or title, would be contravened. The homestead exemption does not apply in the context of a divorce and, accordingly, the court did not err in its division of martial property by placing a $15,000 lien on mother's real estate.

*The parental rights and responsibilities award and the division of marital property are vacated and remanded for proceedings not inconsistent with this opinion. Affirmed in all other respects.*