**STATE of Vermont v. Bridgette Brenda FLETCHER**

[996 A.2d 213]

No. 08-420

¶ 1. April 1, 2010. Defendant Bridgette Fletcher appeals the Addison District Court's denial of her motion to suppress evidence seized during a traffic stop and dismiss the charges against her. Defendant contends that the law enforcement officer lacked sufficient grounds to justify the traffic stop and that the officer did not have the requisite reasonable suspicion to justify turning the traffic stop into a drug investigation. We affirm.

¶ 2. Shortly before midnight on January 31, 2008, a state trooper in a police car with a narcotics identification dog in it observed defendant's vehicle make a left turn onto Charles Avenue in Middlebury. Defendant soon approached a stop sign, stopped completely, and then put on her right turn signal and made the turn. The state trooper followed and watched defendant as she approached a second stop sign. Again, defendant put on her turn signal only after coming to a complete stop. After making a left turn, defendant continued her drive through the town,

---

and eventually approached a third stop sign. As before, defendant did not indicate her intention to turn until after arriving at a complete stop. At that point, the state trooper pulled defendant over for violating 23 V.S.A. § 1064(d), which requires drivers to continuously signal their intention to turn for at least one hundred feet prior to turning.

¶ 3. The officer approached defendant's car and asked for her driver's license, registration, and proof of insurance. Defendant told him that she did not have any of the requested items. He then asked for her name. Defendant gave the officer a false name, which the trooper did not know was false but recognized as belonging to a person who had been involved in drug activity based on information he had received in the past. The officer contacted one of his colleagues who confirmed the state police had received information that a person by that name had been involved with narcotics.

¶ 4. The state trooper also testified that during the stop he observed defendant pushing a purse under the car seat with her legs and acting quite nervously. The officer suggested that she check the purse to see if her license was in it. Defendant declined and stated that the purse did not contain the license. Defendant continued to cast nervous glances toward the purse throughout the encounter, behavior that the state trooper believed was an indication that the purse contained contraband.

¶ 5. At that point in the traffic stop, the officer informed defendant that he had a narcotics canine in his cruiser and that he would be doing an "exterior sniff" of the car. He released the dog, which alerted on the driver's side rear door. The total amount of time that passed between the traffic stop and the exterior sniff was less than five minutes, according to the officer. The officer then read defendant the probable cause consent form, and defendant agreed to allow a warrantless search of her person and her vehicle. Defendant

signed the consent form, again using the false name. The state trooper searched the purse and vehicle and found drug paraphernalia, some containing heroin residue, and defendant's operator's license indicating her proper name.

¶ 6. Defendant was charged in Addison District Court with three misdemeanors: one count of possession of less than two hundred milligrams of heroin, one count of driving with a suspended license, and one count of providing false information to a police officer. Defendant filed an initial motion to suppress based on two arguments. First, defendant contended that § 1064(d) was overbroad and vague as applied to her. Second, she maintained that the traffic stop was "pretextual and illegal." The court denied the motion, holding that the statute's meaning is plain and obvious.[1]

¶ 7. Defendant later filed a second motion to suppress and dismiss, expanding upon her earlier arguments by maintaining that the traffic stop was pretextual because full technical compliance with the statute could not be expected from all drivers. Furthermore, defendant argued that the officer did not take any steps to investigate the alleged traffic violation, but instead immediately turned the traffic stop into a drug investigation without a proper basis for doing so. On August 26, 2008, the district court denied this second motion, finding "nothing inappropriate about [the officer's] behavior whatsoever." Defendant then entered a conditional guilty plea agreement with the State. The Notice of Plea Agreement preserved the "suppression issue" for appeal to this Court.

¶ 8. In reviewing a denial of a motion to suppress, we apply a deferential standard of review to the trial court's findings of fact, and we review the court's legal con-

---

[1] The court did not address defendant's second contention, later noting that it saw no second issue raised in the motion at all.

clusions de novo. *State v. Bain*, 2009 VT 34, ¶ 15, 185 Vt. 541, 975 A.2d 628. Here, defendant does not challenge the trial court's factual determinations. Rather, she contests only the court's legal conclusions. "Our examination of those legal conclusions is therefore nondeferential and plenary." *State v. Bryant*, 2008 VT 39, ¶ 9, 183 Vt. 355, 950 A.2d 467.

¶ 9. Defendant's first argument on appeal is that the state trooper did not have reasonable grounds to stop her for violating § 1064(d). Under both the Fourth Amendment to the United States Constitution and Article Eleven of the Vermont Constitution, a law enforcement officer must have a reasonable and articulable suspicion of wrongdoing before making a traffic stop. *State v. Lussier*, 171 Vt. 19, 34 n.2, 757 A.2d 1017, 1027 n.2 (2000). The officer's subjective intent for making the stop is irrelevant; all that is required is that the officer have an objectively valid reason for the stop. See *id.* at 23-24, 757 A.2d at 1020 ("In determining the legality of a stop, courts do not attempt to divine the arresting officer's actual subjective motivation for making the stop; rather, they consider from an objective standpoint whether, given all of the circumstances, the officer had a reasonable and articulable suspicion of wrongdoing."). Here, the state trooper observed defendant's failure to use her turn signal until just before turning on three separate occasions. If this behavior violated § 1064(d), the officer had a sufficient basis for making the traffic stop.

¶ 10. Defendant contends that her behavior did not violate § 1064(d) and that the officer therefore did not have sufficient justification to make the traffic stop. Our starting point in interpreting a statute is to give effect to legislative intent. *Payne v. U.S. Airways, Inc.*, 2009 VT 90, ¶ 24, 186 Vt. 458, 987 A.2d 944. "In determining legislative intent, we begin with the plain meaning of the statutory lan-

guage." *State v. LeBlanc*, 171 Vt. 88, 91, 759 A.2d 991, 993 (2000). When the legislative intent is clear from the statutory language, our inquiry is at an end, and we enforce the statute according to its plain terms. *Payne*, 2009 VT 90, ¶ 24; *LeBlanc*, 171 Vt. at 91, 759 A.2d at 993. Moreover, we "presume that all language in a statute was drafted advisedly and that the plain ordinary meaning of the language used was intended." *Comm. to Save Bishop's House, Inc. v. Med. Ctr. Hosp. of Vt., Inc.*, 137 Vt. 142, 153, 400 A.2d 1015, 1021 (1979) (citation omitted).

¶ 11. Section 1064(d) provides that "[a] signal of intention to turn right or left when required shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning." Defendant contends that the words "when required" suggest that use of the turn signal is not mandatory in all instances, but rather only when traffic conditions are such that use of the signal is appropriate. We disagree. The plain, ordinary meaning of the statutory language indicates that the operator of a motor vehicle must indicate an intention to turn within one hundred feet of turning regardless of traffic conditions. The "when required" proviso, by its placement in the sentence, refers to the requirement to use the signal at the intersection. That requirement is contained in § 1064(a) ("Before changing direction . . . , a driver shall give warning of his or her intention with the hand signals as provided in section 1065 of this title, or with a mechanical or lighting device approved by the commissioner of motor vehicles.") and § 1065(b) ("No turn to right or left may be made without first giving a signal of an intention to do so either by hand or by signal in accordance with section 1064 of this title."). These sections required defendant to signal for each of the turns she made; § 1064(d) required that signal to commence at least one hundred feet before the intersection. Thus, in reading the

various sections of the statutory scheme together, as we must, see *McAlister v. Vt. Prop. & Cas. Ins. Guar. Ass'n*, 2006 VT 85, ¶ 10, 180 Vt. 203, 908 A.2d 455, the plain meaning of § 1064(d) supports the trial court's construction.

¶ 12. Our interpretation of § 1064(d) is supported by the decisions of courts from other jurisdictions that have interpreted similar statutes. See, e.g., *State v. Lowman*, 613 N.E.2d 692, 695 (Ohio Ct. App. 1992) ("[T]he phrase 'when required' simply refers to a situation in which the driver intends to change direction on the roadway."); *State v. Kelly*, 211 P.3d 932, 937 (Or. Ct. App. 2009) ("[T]he text of [the statute] appears to be plain and unambiguous. It requires continuous signaling for a specified distance: 'not less than the last 100 feet traveled.' "). We recognize defendant's argument that the statute should not be interpreted according to its plain meaning because it is often violated and impossible to comply with when the operator does not know whether he or she will turn, and in what direction, until he or she reaches the intersection. As we note below, though this argument is strong, it is ultimately for the Legislature to address, not this Court.

¶ 13. Given our interpretation of the statute, the facts indicate that defendant's conduct violated § 1064(d) on three occasions. Therefore, the state trooper who observed defendant's conduct had the necessary reasonable and articulable suspicion of wrongdoing required to make the traffic stop.

¶ 14. Next, defendant argues that the state trooper did not have the reasonable and articulable suspicion necessary to expand the traffic stop into a drug investigation. We conclude that this argument was not preserved for appeal, and we decline to address it.

¶ 15. Defendant entered into a plea agreement with the State, conditioned on resolution of the "suppression issue" by this Court. Vermont Rule of Criminal Procedure 11(a)(2) permits a criminal defendant, "[w]ith the approval of the court and the consent of the state, [to] enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion." Rule 11(a)(2) is identical to its federal counterpart, and "the purposes and limitations of the federal rule are intended to be followed under the Vermont rule." Reporter's Notes — 1989 Amendment, V.R.Cr.P. 11. Therefore, in determining whether a particular issue has been preserved for appellate review, it is instructive to look to how federal courts have applied Federal Rule of Criminal Procedure 11(a)(2). See *State v. Peterson*, 2007 VT 24, ¶ 10, 181 Vt. 436, 923 A.2d 585.

¶ 16. Federal courts, in applying Federal Rule of Criminal Procedure 11(a)(2), have required that defendants clearly specify the issues they wish to preserve when entering a conditional guilty plea. For instance, in *United States v. Coffin*, the court noted that under the federal rule, in a conditional plea, "[t]he issues preserved for appeal must be framed with precision and stated with specificity." 76 F.3d 494, 497 (2d Cir. 1996). Similarly, in *United States v. Kingcade*, the court stated that "[t]o preserve an issue for appeal, a conditional plea must precisely identify which pretrial issues the defendant wishes to preserve for review. All non-jurisdictional issues not specifically preserved in the conditional plea agreement are waived." 562 F.3d 794, 797 (7th Cir. 2009) (quotation omitted). We have also found that the language of the plea agreement limits the issues that we can review on appeal. See *Peterson*, 2007 VT 24, ¶ 9; *State v. Thompson*, 162 Vt. 532, 534 n.*, 650 A.2d 139, 140 n.* (1994).

¶ 17. In this case, defendant made two motions to suppress. The first was directed entirely at the proper interpreta-

tion of the statute — the argument resolved above — and the trial court denied that motion. Thereafter, defendant renewed the motion to suppress, stating, "[defendant] moves to suppress evidence obtained as a result of a pretextual and therefore unlawful traffic stop and subsequent drug investigation." In that renewed motion, defendant argued that the stop was pretextual because "full technical compliance with the statute cannot be expected from all drivers." Defendant added, however, that the officer did not investigate the infraction but "turned this traffic stop into a drug investigation without any proper basis for doing so," in violation of the Vermont Constitution as interpreted by this Court in *State v Cunningham*, 2008 VT 43, 183 Vt. 401, 954 A.2d 1290. The court held an evidentiary hearing on this second motion, and defense counsel made a detailed argument, but never mentioned the contention that the officer could not constitutionally pursue a drug investigation.[2]

---

[2] After asking the officer about defendant's actions in trying to hide her purse, the prosecutor paused and said "given what the argument is and the motion to suppress," he did not feel the need to go further, but would do so if the court wanted to hear more. The court asked defense counsel whether she was "challenging anything beyond this point." Defense counsel answered "I'd certainly like to hear what the officer has to say . . . I want to know about how the dog got there." At that point, the prosecutor asked about how the officer learned that the name given by defendant matched a person who was reported to be involved with drug activity in the past. Defense counsel did not cross-examine with respect to the additional information or make any argument other than that the stop was improper. Defense counsel never answered the question asked by the judge.

Only the State referred to this argument. In denying the motion, the court held that the investigation was justified by the circumstances.

¶ 18. Defendant signed a conditional plea agreement, pleading guilty, subject to "appeal of suppression issue" to this Court. Defendant filed an appeal "of the ruling denying her motion to suppress evidence obtained as a result of an illegal search and seizure." The notice of appeal contains the exact wording of defendant's first motion, but not the wording of the second motion.

¶ 19. In her brief on appeal, defendant has raised and briefed the issue of whether the officer had grounds to pursue a drug investigation, relying upon *Cunningham*, the only dog sniff narcotics case this Court has decided. 2008 VT 43. The State has responded in part that it never consented to defendant raising that issue. We agree that under the standard of the federal cases defendant has failed to describe this issue with specificity. See *Kingcade*, 562 F.3d at 797. The conditional plea agreement and the appeal refer to a suppression issue, the latter in the exact words of the motion that attacked only the applicability of § 1064(d). Neither document references more than one issue or more than one motion. We also note that the second issue was barely preserved in the trial court, if at all. The factual development, particularly with respect to how long defendant was seized in advance of the canine investigation, is very limited, and the defendant failed to develop the relevant facts when she had an opportunity. *Cunningham* had no majority rationale due in part to limited factual development. See 2008 VT 43, ¶ 38 n.7 (plurality opinion) (referring to record's "factual void").

¶ 20. We hold, therefore, that defendant failed to comply with Vermont Rule of Criminal Procedure 11(a)(2) by not specifically describing the issue with respect to the drug investigation in the condi-

tional plea agreement. Having failed to do so, defendant cannot raise the issue here.

¶ 21. Although we are compelled to uphold the application of § 1064(d) in this case, we agree with defendant that the statute goes well beyond the safety concerns that it purports to implement and is constantly violated, even by safety-conscious drivers. It is difficult to see why other users of the road need a motorist approaching an intersection marked by a stop sign or signal to indicate his or her intention to turn well in advance of actually making the turn. Indeed, for no apparent reason, the statute prohibits a motorist from approaching an intersection and determining *at the intersection* — after stopping at a sign or signal as required — his or her future direction. As a consequence, when a motorist is not familiar with his or her surroundings, the motorist often must violate the law to determine his or her desired direction. In effect, the statute precludes a motorist from turning at any intersection without knowing well in advance the direction he or she will go. We therefore urge the Legislature to reexamine the statute and narrow its operation within more reasonable limits.

*Affirmed.*