2012 VT 76

## In re Timothy D. Wiley

[58 A.3d 966]

No. 11-206

Present: Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.

Opinion Filed October 12, 2012

---

*Matthew Valerio*, Defender General, *Seth Lipschutz*, Prisoners' Rights Office, and *Nicholas Wanger*, Legal Intern, Montpelier, for Petitioner-Appellant.

*William H. Sorrell*, Attorney General, and *John Treadwell*, Assistant Attorney General, Montpelier, for Respondent-Appellee.

¶ 1. **Burgess, J.** Petitioner Timothy Wiley appeals the Windham Civil Division's denial of his request for DNA testing pursuant to Vermont's Innocence Protection Act. 13 V.S.A. § 5561 et seq. Following an unsuccessful appeal of convictions for aggravated sexual assault and lewd and lascivious conduct stemming from charges that he raped his girlfriend's daughter, and for obstruc-

tion of justice in connection with threatening and encouraging the mother to commit perjury, *State v. Wiley*, 2007 VT 13, 181 Vt. 300, 917 A.2d 501, petitioner claimed innocence and filed for relief under the Innocence Protection Act. Subject to certain statutory conditions, the Act provides a right to post-conviction DNA testing to demonstrate innocence in support of a bid to vacate judgment, or to secure a new trial, resentencing, or discharge from custody. *Id.* § 5569(b)-(c). Petitioner claims error in the trial court's conclusion that his anticipated test results would not have created a reasonable probability of a different result had they been available at trial. We affirm the denial of petitioner's request on the ground that the testing he seeks is not of any evidence "obtained during the investigation or prosecution of the crime" for which innocence is claimed, as required by the Act, rendering his request outside of the Act's relief. *Id.* § 5561(a).

¶ 2. The facts may be summarized as follows. At trial, the victim testified that petitioner repeatedly raped her when she was a minor living in the household of petitioner and her mother. The State bolstered the victim's testimony with expert analysis of DNA evidence taken from a stain on her bed sheet showing that petitioner was most likely the source of semen found in the stain.[1] The analysis also found a partial DNA profile for female epithelial, or skin, cells in the stain that could neither confirm nor exclude the victim as the source. The State also presented the testimony of the victim's father, her social worker, and other witnesses, as well as physical evidence found in the victim's bedroom, including a sanitary pad used by the victim that the State argued corroborated her allegation of a sexual encounter with petitioner during menstruation.

¶ 3. Petitioner's defense at trial was that the allegations were false, and that the stain on the victim's bed sheet was from a sexual encounter between him and the victim's mother. The mother testified that she and petitioner engaged in intercourse once on her daughter's bed, although mother could not say if it happened before her daughter left the house after accusing petitioner of assault. Mother neither supplied nor was asked for a DNA sample, however. Thus her DNA was never obtained or compared against DNA on the sheet. Taped prison conversations

---

[1] This was expressed in terms of not being able to exclude petitioner as the source, i.e., that there was a 1:543 trillion chance that the semen was not petitioner's.

between mother and petitioner also revealed that petitioner encouraged the mother to lie under oath about having sex with him on her daughter's bed when mother repeatedly told him she remembered no such thing. *Wiley,* 2007 VT 13, ¶ 16.

¶ 4. Explaining its guilty verdict, the criminal trial court emphasized that it found the victim's testimony "strongly credible" and "abundantly supported" by the DNA evidence. The court further explained that it did not believe mother's testimony about her sexual encounter with petitioner on the victim's bed. The court considered this claim a product of an "elaborate fiction" concocted by petitioner.

¶ 5. Professing his innocence in the instant proceeding, petitioner argued that, even in the face of the victim's testimony, a DNA test result showing that victim's mother was either "conclusively identified," or not excluded, as the source of the female skin cells in the stain would strongly support petitioner's defense theory. Petitioner further asserted that this evidence was "obtained in connection with the offense that is the basis of the challenged conviction" as required by § 5566(a)(3), because the female epithelial cells were found on the bed sheet stain seized as evidence. Finally, he contended that while § 5566(a) is silent on whether a court may order DNA testing of a third party, such as the mother in this case, petitioner had a "constitutional need" for this evidence to prove his innocence which outweighed the limited privacy interest of victim's mother.

¶ 6. The civil court reviewing this action for post-conviction relief denied this request, concluding that petitioner failed to show that the result of the requested test would have created a reasonable probability of acquittal. The court reasoned that, at most, the result would show that petitioner had intercourse with the mother at some point in time, and could not disprove the victim's allegations or otherwise serve to exonerate petitioner. The court did not address whether the Act allows a court to order the taking and testing of new DNA evidence not in the case, or from a nonparty, to support a claim of innocence.

■ ¶ 7. We note, preliminarily, that this Court has yet to review a trial court decision on a request for DNA testing under the Innocence Protection Act and, therefore, has not addressed the proper standard for such review. Nor will the standard be resolved here because we need not analyze the court's rationale to

determine that petitioner was not entitled to the DNA test requested. Rather, the trial court's decision may be affirmed on an alternative legal ground found in the record. See *In re Handy*, 171 Vt. 336, 343, 764 A.2d 1226, 1234 (2000) ("We will not reverse a lower court's decision if the record before us discloses any legal ground which would justify the result." (quotation omitted)).

¶ 8. In this particular case, the language of the statute cannot escape notice and unambiguously limits the trial court's authority to the ordering of DNA analysis of evidence previously obtained and preserved.[2] The Innocence Protection Act consistently refers to the testing of evidence already extant from the underlying case. Persons convicted of certain crimes, including aggravated sexual assault and lewd and lascivious conduct with a child, may request "forensic DNA testing of any evidence which may contain biological evidence *that was obtained during the investigation or prosecution of the crime.*" 13 V.S.A. § 5561(a), (b)(2)(12), (14) (emphasis added). The Act further provides that a trial court shall grant such a request if it finds that: (1) the test result would have created a reasonable probability of acquittal at trial; (2) the evidence to be tested *is still in existence*; (3) the evidence to be tested *was obtained* in connection with the offense that is the basis of the challenged conviction and: (A) was not previously subjected to DNA testing; or (B) although previously tested, remains available for additional probative testing; and (4) the chain of custody of the evidence *has been* protected. See *id.* § 5566(a).

¶ 9. Absent ambiguity and a compelling reason to read it otherwise, the Act's plain language contemplates DNA analysis only of "biological evidence" contained within evidence already in hand, rather than testing material not in evidence and yet to be

---

[2] As explained above, petitioner argued below that the female skin cells found on the bedsheet were obtained in connection with the offense that is the basis of his challenged convictions, as required by § 5566(a)(3). He did not, however, address the statute's more specific requirement that the evidence to be tested need be obtained during the investigation or prosecution of such offense. Rather, petitioner pointed to § 5566(c)'s requirement of confidentiality regarding DNA information obtained from "any person" pursuant to a court order under the Innocence Protection Act as support for his argument that there was a "constitutional need" to test the victim's mother — an argument he does not raise on appeal. Although argued imperfectly below, both parties presciently briefed the question of statutory construction on appeal.

collected. *Id.* §§ 5561(a)(1), 5566(a)(3); see also *State v. Fletcher,*
2010 VT 27, ¶ 10, 187 Vt. 632, 996 A.2d 213 (mem.) (explaining
that, absent ambiguity, a statute's plain language controls its
interpretation). Section 5561(a) specifically requires that the re-
quested testing be of evidence collected during the original
investigation of the crime. The general criterion that the evidence
be "obtained in connection with the offense that is the basis of the
challenged conviction," *id.* § 5566(a)(3), must be read in light of the
more specific requirement of § 5561(a). See *Pearson v. Pearson,*
169 Vt. 28, 36, 726 A.2d 71, 76 (1999) (citing the canon of statutory
construction that a more specific provision controls a more general
one). Reading § 5561(a) with § 5566(a)(3), the Act expresses no
right to a court ordered *collection* of new samples for DNA
testing — material neither in evidence nor obtained during the
investigation or prosecution of the crime for which a petitioner
was convicted — for comparison with evidence already collected in
that case.

¶ 10. Petitioner argues that what he seeks to analyze, the
mother's DNA, should be treated as evidence obtained in connec-
tion with the initial criminal conviction because she was "closely
involved" in the case, having been interviewed during the inves-
tigation and having testified at trial.[3] In support of his claim that
this Court should apply the Act to authorize sampling of a
nonparty's body for DNA testing, petitioner cites a decision from
the Massachusetts Supreme Judicial Court ordering DNA testing
of a newly discovered putative suspect to obtain exculpatory
evidence in a then-pending prosecution. See *In re Jansen,* 826
N.E.2d 186, 190 (Mass. 2005), *abrogated on other grounds,*
*Commonwealth v. Dwyer,* 859 N.E.2d 400 (Mass. 2006). That
decision, as petitioner notes, was based in part on the right of an
accused to offer favorable evidence under the Declaration of
Rights of the Massachusetts Constitution. This Court, he argues,
should read Article 10 of the Vermont Constitution, which protects
a defendant's right to "call for evidence in [his or her] favor," as
likewise providing a right to compel DNA testing of a nonparty.
See Vt. Const. ch. I, art. 10.

¶ 11. Petitioner's argument is unavailing. The Act does not
say what he wants it to say. The Massachussetts case invokes

---

[3] Petitioner represented at oral argument, without dispute from the State, that
mother is currently unwilling to supply a sample of her DNA.

state-specific constitutional rights to criminal trial protections and is inapposite to petitioner's nonconstitutional claim for post-conviction relief governed by the express terms of Vermont's statute. Similarly, Vermont's constitutional guarantee of petitioner's right to call for favorable evidence more particularly applies, in its full context, "in all *prosecutions* for criminal offenses." *Id.* (emphasis added). Notwithstanding petitioner's analogy to trial rights in Massachussetts and his claim to trial rights under Article 10, his trial is long done. Petitioner asserted no constitutional right to obtain and compare mother's DNA in the course of the original prosecution, and such a constitutional claim at this point is inapplicable to this post-prosecution claim for relief under the Innocence Protection Act.

¶ 12. By its terms, the Act provides a right to DNA testing of evidentiary material obtained in the underlying case upon showing of a reasonable probability of a different trial outcome under two circumstances: where a person was convicted at a time when DNA technology did not exist, or where DNA testing was available, but was not done. 13 V.S.A. § 5566(a)(3)(A)-(B). There may come a case when it appears that the only way to vindicate innocence is through DNA testing of newly discovered evidence, such as an alternative suspect unknown before conviction. See *Jansen*, 826 N.E.2d at 190 (explaining that defendant sought order for putative suspect to provide DNA sample to show that suspect committed crime for which defendant was charged). This is not such a case, but even if it were, the Act in its current form may offer no solution.

¶ 13. As currently written, the Innocence Protection Act affords petitioner no right to test the DNA of mother in this case because the physical sample required was not evidence obtained during the investigation and prosecution of the crimes underlying petitioner's challenged convictions. Petitioner's argument that the stain is evidence "obtained in connection with the offense" as required by § 5566(a)(3) ignores the context of that section which further specifies that the necessary sample be previously subject to, or previously available for, DNA testing for trial, § 5566(a)(3)(A)-(B), as well as the companion requirement of § 5561(a) that the evidence to be tested under the Act — here a physical sample from mother — also be "obtained during the investigation or prosecution of the crime." The Legislature in-

cluded nothing in the Act to compel seizure of a new evidentiary sample from a nonparty for DNA testing. On that ground, we affirm the court's denial of petitioner's request for DNA testing in this case.

¶ 14. Having decided petitioner's appeal on this basis, we do not address his arguments that the result of the requested testing would create a reasonable probability of a different result or, that under that circumstance, the statute authorizes the compelled seizure of an evidentiary sample from a nonparty.[4]

*Affirmed.*

---

[4] Although unnecessary to resolve his appeal, we note that mother's DNA is of dubious relevance, let alone probative value. The petition proffers no foundation for the bald assertion that a test could "conclusively identify" mother as the source of the skin cells found on the daughter's bedsheet when the daughter could be excluded. Moreover, even if the presence on the sheet of mother's DNA could be confirmed, she was unable to say whether her sexual encounter with petitioner on daughters's bed occurred before her daughter vacated the house.