2013 VT 90



In re Towne (2012-162)

 

2013 VT 90

 

[Filed 04-Oct-2013]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 2013 VT 90 
 
  


 No. 2012-162
 
  


 In re Edwin Towne
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
  
 
 
 Superior Court, Chittenden
 Unit,
 
 
  
 
 
 Civil Division
 
 
  
 
 
  
 
 
  
 
 
 March Term, 2013
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Geoffrey
 W. Crawford J.
 
 
  
 
 Matthew F. Valerio, Defender General, Dawn Matthews,
Appellate Defender and Nick Wanger,

  Legal Intern, Montpelier, for Petitioner-Appellant.

 

William H. Sorrell, Attorney General, and John Treadwell,
Assistant Attorney General,

  Montpelier, for Respondent-Appellee.

 

 

PRESENT:  Reiber, C.J.,
Dooley, Skoglund, Burgess and Robinson, JJ.

 

 

¶ 1.            
REIBER, C.J.   Petitioner Edwin Towne appeals the trial
court’s denial of his request for post-conviction DNA testing under Vermont’s
Innocence Protection Act, 13 V.S.A. § 5561.  We affirm the denial
because the court correctly concluded that the results of the requested test
would not have created a “reasonable probability” of a different outcome at
trial.  

¶ 2.            
Petitioner was convicted of murder in 1989.  This Court affirmed
petitioner’s conviction on direct appeal in 1992.  State
v. Towne, 158 Vt. 607, 615 A.2d 484 (1992).  Since that time,
petitioner has filed at least ten requests for post-conviction
relief, all of which have been denied.   See Towne v. Hoffman,
No. 2008-095, 2008 WL 3976483, at *1 (Vt. Aug. 21, 2008) (unpub.
mem.),
https://www.vermontjudiciary.org/UPEO2006-2010/eo08-095.pdf.  In 2011,
petitioner requested that hairs found on the victim’s body be tested for
mitochondrial DNA (mtDNA).  If the results
matched neither petitioner nor the victim, petitioner asked that authorities be
ordered to obtain a sample from petitioner’s former girlfriend’s son, whom
petitioner maintains committed the murder.  After reviewing the evidence
in petitioner’s trial, the court rejected petitioner’s testing request and
granted the State’s motion for summary judgment because petitioner could not
show a reasonable probability that DNA results from the hair would have
resulted in a different outcome at trial.  The court noted that it could
not compel the son to produce a sample; but it held that even if the son
voluntarily did so, or if the son’s DNA was already present in the DNA computer
registry for comparison, “[a]ll that can be said with
reasonable certainty is that DNA evidence showing that [the son’s] hair was
present on the scene would be a point in favor of the defense, subject like
most points to conflicting interpretations. . . . The
presence of hair from [the son] on the victim’s body would open a range of
possible explanations without excluding [petitioner] as the guilty party.”
    

¶ 3.            
On appeal, petitioner contends that the trial court misapprehended the
applicable standard for granting post-conviction relief and that the DNA
results would, in fact, have led to a reasonable probability of a more
favorable outcome.  

I.

¶ 4.            
 We have not previously addressed either the standard to be applied
by the trial court in deciding a request for post-conviction DNA testing under
the act or, indeed, our own standard for reviewing a trial court’s resolution
of that request.  See In re Wiley, 2012 VT 76, ¶ 7, ___ Vt.
___, 58 A.3d 966.  In this case, we consider only the first question, the
appropriate standard for the trial court to apply, because we are bound to
apply the same standard as the lower court when reviewing the grant of summary
judgment.  Richart v. Jackson, 171 Vt. 94, 97, 758 A.2d 319, 321 (2000). 


¶ 5.            
Determining the appropriate standard for considering requests under the
Innocence Protection Act is a question of statutory construction and,
therefore, a pure question of law that we review de novo.  See Smith v.
Desautels, 2008 VT 17, ¶ 12, 183 Vt. 255,
953 A.2d 620 (noting that statutory
construction “is a pure question of law”).  As with
all matters of statutory interpretation, legislative intent is paramount.
 See Pease v. Dev’t Review Bd., 2011 VT 103, ¶ 17, 190 Vt. 639, 35
A.3d 1019.  

¶ 6.            
The Innocence Protection Act provides a right to post-conviction testing
under certain enumerated circumstances.  See 13 V.S.A. §§ 5561
et seq.  Before a trial court may grant a contested request for DNA
testing, it must find, among other things, that:

A reasonable
probability exists that the petitioner would not have been convicted or
would have received a lesser sentence for the crime which the petitioner claims
to be innocent of in the petition if the results of the requested DNA testing
had been available to the trier of fact at the time of the original
prosecution.

 

13
V.S.A. § 5566(a)(1) (emphasis
added).    

 

¶ 7.            
A robust body of case law has sought to define the contours of the “reasonable
probability standard” in the context of claims of ineffective assistance of
counsel and improper failure to disclose exculpatory evidence.  See Kyles v. Whitely, 514 U.S. 419, 434 (1995)
(explaining in federal constitutional claim based on prosecution’s failure to
disclose exculpatory evidence that “touchstone of materiality is a ‘reasonable
probability’ of a different result” (emphasis added) (discussing United
States v. Bagley, 473 U.S. 667 (1985) and Brady v. Maryland, 373
U.S. 83 (1963))); Strickland v. Washington, 466 U.S. 668, 694 (1984)
(holding that prejudice prong of ineffective-assistance-of-counsel-claim is
satisfied when defendant shows “a reasonable probability that, but for
counsel’s unprofessional errors, the result of the proceeding would have been
different” (emphasis added)); In re Dunbar, 162 Vt. 209, 212, 647 A.2d
316, 319 (1994) (noting same “reasonable probability” standard); State v.
Gibbons, 146 Vt. 342, 344, 503 A.2d. 540, 541 (1985) (applying Bagley
materiality standard).  “[A]s Justice Frankfurter advised, ‘if a word is
obviously transplanted from another legal source, whether the common law or
other legislation, it brings the old soil with it.’ ” 
Evans v. United States, 504 U.S. 255, 260, n.3 (1992)
(quoting F. Frankfurter, Some Reflections on Reading Statutes, 47 Colum.
L. Rev. 527, 537 (1947)).  That is to say, absent
evidence to the contrary, we presume that the Legislature was familiar with our
long-standing interpretation of the phrase “reasonable probability” when it
promulgated the Innocence Protection Act, and thus intended to adopt that
standard.  See Fletcher Hill, Inc. v. Crosbie,
2005 VT 1, ¶17, 178 Vt. 77,  872 A.2d 292 (noting presumption in similar
context); accord State v. Dupigney, 988 A.2d
851, 859 (Conn. 2010) (adopting as appropriate standard for post-conviction DNA
testing the same standard employed in the prejudice prong of
ineffective-assistance-of-counsel-claim inquiries and in resolving alleged Brady
violations).  

¶ 8.            
 We hold that under our Innocence Protection Act, “[a] reasonable
probability is a probability sufficient to undermine confidence in the
outcome.”  Strickland, 466 U.S. at 694 (discussing “reasonable
probability” in the context of the prejudice prong of an ineffective-assistance-of-counsel
claim).  A petitioner must demonstrate that the evidence “ ‘creates a reasonable doubt that did not otherwise
exist.’ ”  State v. Goyette, 156 Vt. 591, 598, 594 A.2d 432, 436
(1991) (quoting United States v. Agurs, 427
U.S. 97, 112 (1976)).  As other courts have observed, this is not a
sufficiency of the evidence test.  See, e.g., Dupigney,
988 A.2d at 858 (“[T]he focus is not whether, based upon a threshold standard,
the result of the trial would have been different if the evidence had been
admitted.  We instead concentrate on the overall fairness of the trial and
whether [the unavailability] of the evidence was so unfair as to undermine our
confidence in the jury’s verdict.” (quotation
omitted)).  A reasonable probability is “a reasonable chance and not
merely an abstract possibility.”  Richardson v.
Super. Ct., 183 P.3d 1199, 1205 (Cal. 2008) (adopting same
standard in the context of its own post-conviction DNA-testing statute). 
    

¶ 9.            
When determining if the petitioner has shown a reasonable probability of
a different outcome, a court must take into account all of the evidence before
the jury, considering the trial as it actually unfolded.  See Strickland,
466 U.S. at 695.  In the context of an ineffective-assistance-of-counsel
claim, the United States Supreme Court has offered the following guidance for
reviewing the factual record:

Some
of the factual findings will have been unaffected by the errors, and factual
findings that were affected will have been affected in different ways.
 Some errors will have had a pervasive effect on the inferences to be drawn from the evidence,
altering the entire evidentiary picture, and some will have had an isolated,
trivial effect.  Moreover, a verdict or conclusion only weakly supported
by the record is more likely to have been affected by errors than one with
overwhelming record support.  Taking the unaffected findings as a given,
and taking due account of the effect of the errors on the remaining findings, a
court making the prejudice inquiry must ask if the defendant has met the burden
of showing that the decision reached would reasonably likely have been
different absent the errors.

 

Id. at
695-96. 

¶ 10.         We
take this opportunity to clarify that a petitioner seeking post-conviction DNA
testing under the Innocence Protection Act does not need to show by a
“preponderance of the evidence that there is a reasonable probability” of a
different outcome.  See In re Grega, 2003
VT 77, ¶ 7, 177 Vt. 631, 833 A.2d 872.  The
difference in standards may be subtle, but is nonetheless of sufficient
importance to warrant the U.S. Supreme Court’s explicit clarification that  the reasonable probability standard is a less onerous
one than a preponderance of the evidence standard.  See Strickland,
466 U.S. at 694 (“The result of a proceeding can be rendered unreliable, and
hence the proceeding itself unfair, even if the errors of counsel cannot be
shown by a preponderance of the evidence to have determined the outcome.”); see
also Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (explaining that a
preponderance of the evidence standard would be “opposed to our clearly
established precedent . . . that the prisoner need only
demonstrate a reasonable probability that . . . the result
of the proceeding would have been different” (quotation omitted)).  

¶ 11.         Similar
to the U.S. Supreme Court, we previously rejected—albeit in a non-precedential
manner—this precise accumulation of standards in the context of the prejudice
prong of an ineffective-assistance-of-counsel claim for two reasons: one,
because of the difficulty in defining what this awkward construction would mean
in practice, and, two, because of the further difficulty it would engender in
ascertaining on review whether a trial court applied the correct
standard.   See In re Combs, No. 2012-027, 2012 WL 2880535, at
*3, (Vt. July 11, 2012) (unpub. mem.)
(“[I]n ruling that petitioner here failed to ‘prove by a preponderance of the
evidence that there was a reasonable probability’ of a different outcome, the
trial court conflated the preponderance and reasonable-probability standards
that the [U.S] Supreme Court has carefully distinguished, and rendered it
impossible to determine which standard the court applied.”[1]).  The same concerns exist in the
case of DNA testing.  Therefore, we eschew the preponderance standard in
this context and adopt the Strickland standard that “[a] reasonable
probability is a probability sufficient to undermine confidence in the outcome.” 
466 U.S. at 694.       

II.

¶ 12.         Having
established the appropriate standard of review, we consider the trial court’s
resolution on cross-motions for summary judgment of petitioner’s request. 
Summary judgment is appropriate if a “movant shows that there
is no genuine dispute as to any material fact and the movant is entitled
to judgment as a matter of law.”  V.R.C.P. 56(a). 
“This Court reviews a grant of summary judgment de novo, employing the same
standard as the trial court.”[2] 
In re Barrows, 2007 VT 9, ¶ 5, 181 Vt. 283, 917
A.2d 490.

¶ 13.         As
the trial court correctly recited, the determinative question in this case is
whether—assuming, as we must, the best case scenario for petitioner—the undisputed
material facts would demonstrate a reasonable probability of a different
outcome at trial.  Under the reasonable probability standard, we ask
whether the results petitioner desired from the DNA test would be “sufficient
to undermine confidence in the outcome” of the trial.  Strickland,
466 U.S. at 694.  Based on the totality of the evidence at petitioner’s
murder trial, no possible result of the available tests would sufficiently
undermine our confidence in the verdict to warrant reversal. 

¶ 14.         As a
threshold matter, we note that petitioner requested mitochondrial DNA testing,
not nuclear DNA testing.[3] 
MtDNA offers certain forensic advantages by virtue of
its relative cellular abundance.  See United States v. Beverly, 369 F.3d 516, 528-29 (6th Cir. 2004).  In Beverly,
the United States Court of Appeals for the Sixth Circuit discussed the
scientific basis for these advantages:  

[W]hile any given cell contains only one nucleus,
there are a vast number of mitochondria.  As a result, there is a
significantly greater amount of mtDNA in a cell from
which a sample can be extracted by a lab technician, as compared to nuclear
DNA.  Thus, this technique is very useful for minute samples or ancient
and degraded samples.  In addition, mitochondrial DNA can be obtained from some sources that nuclear DNA
cannot.  For example, mtDNA can be found in
shafts of hair, which do not have a nucleus, but do have plenty of
mitochondria.  Nuclear DNA can only be retrieved from the living root of
the hair where the nucleus resides.

 

Id. at 529 (citation omitted).  


 

¶ 15.         But mtDNA also possesses certain inherent limitations. 
Its limited value to petitioner in this particular case is patent because of
its inability to distinguish between matrilineal descendants. See id.
(“[M]tDNA
. . . is inherited only from the mother and thus all maternal
relatives will share the same mtDNA profile, unless a
mutation has occurred.”).  MtDNA testing would
not definitively establish that any of the hairs on the victim’s body came from
petitioner’s former girlfriend’s son, who petitioner maintains actually
committed the crime, but would instead indicate that the hairs could have come
from him or any other people descended from a common matrilineal ancestor,
including his mother.  We conclude that a determination that the hair
samples belonged to either defendant’s former girlfriend or her son would not
cause our confidence in the trial’s outcome to waiver.  

¶ 16.         Although
petitioner denies the potential import of the easy interpersonal transference
of hair samples, jurors considered testimony from a defense witness premised on
precisely that basis.  At trial, the defense called an examiner from the
Federal Bureau of Investigation who testified that none of the hair samples
collected from defendant’s car matched the victim’s hair, according to a
microscopic analysis.  The testimony was presumably designed to call into
doubt the idea that the victim had ever been in petitioner’s car since hair is
transferred easily, yet none of the victim’s hair was found in the
vehicle.  The examiner testified that hair can be transferred between
people and objects, offering examples of how that might occur.  Even if mtDNA analysis established the hair samples belonged to the
ex-girlfriend or her son, because petitioner shared a home with them, the
examiner’s testimony would have permitted jurors to weigh the possibility that
petitioner himself was the agent for the deposition of the girlfriend’s or
son’s hair onto the victim’s body.  The potential impact of this new DNA
evidence is simply too speculative and remote to call into doubt the jury’s
verdict.  See Richardson,  183 P.3d at 1205 (“[T]he defendant
must demonstrate that, had the DNA testing been available, in light of all of
the evidence, there is a reasonable probability—that is, a reasonable chance
and not merely an abstract possibility—that the defendant would have obtained a
more favorable result.”).  

¶ 17.         The
relative insignificance of any potential new evidence from the requested
testing is compounded by the fact that a mtDNA match to petitioner’s ex-girlfriend or her son would
not contradict any evidence advanced by the State in its case.  Indeed,
the State presented no forensic evidence at trial that any of the hairs found
on the victim’s body came from petitioner, and no biological evidence
implicating petitioner was found at the site where the body was discovered.
 To the extent that the jury was permitted to infer that a comparison of
petitioner’s own hair with the samples might have yielded a match, it did so
based on petitioner’s own refusal to submit to a nontestimonial
order under Vermont Rule of Criminal Procedure 41.  See State v. Towne,
158 Vt. at 612-13, 615 A.2d at 487.  The trial
court ruled that jurors would be permitted to consider his refusal as evidence
of guilt.  Id.  We will not speculate with respect to the
possibility that petitioner might have pursued a different strategy involving
compliance with the nontestimonial order.  Even
if the defense had been able to introduce mtDNA
evidence indicating that the hairs on the victim’s body belonged to someone
other than petitioner, jurors would still have been able to weigh defendant’s
refusal, which—regardless of the actual results—might well indicate his concern
that he could have been a match.  He cannot now offer to cure his refusal
by suggesting that he might have done so if DNA testing had been
available.  

¶ 18.         Petitioner’s
assertion that the State’s case was circumstantial misapprehends the nature of
our inquiry into the probability of a different outcome at trial.  The
relative strength of a particular case has clear import in analyzing the
reasonable probability of a different outcome.  See Strickland, 466
U.S. at 695 (noting that “a verdict or conclusion only weakly supported by the
record is more likely to have been affected by errors than one with
overwhelming record support” in considering whether inadequate assistance of
counsel constitutes prejudice).  Here, however, a mtDNA
match to the ex-girlfriend or her son would not alter the nature of the State’s
case because the DNA results would not call into question the
evidence—circumstantial or otherwise—upon which the jury convicted.  At
trial, jurors heard evidence that defendant had driven the road where the
victim was last seen alive the on morning of her disappearance.  Towne,
158 Vt. at 612, 615 A.2d at 487.  Testing
revealed that the bullets removed from victim’s body matched those fired from a
gun petitioner purchased, and authorities discovered that gun hidden in one of
the concrete blocks forming the foundation of the house petitioner was
building.  Id. 

¶ 19.         As
part of his request for post-conviction DNA testing, petitioner posits that his
ex-girlfriend’s son had the means and opportunity to kill the victim. 
Petitioner stresses that the son lived with his mother and petitioner in
Richmond and Eden.  Petitioner points out that his ex-girlfriend and her
son were present when he purchased the gun later identified as the murder
weapon and that the son had fired it on at least one occasion.  He also
notes that the location of the house he was building was no secret to anyone
and that the son assisted him in construction, affording the son access to the
foundation pillar where authorities discovered the weapon.  And petitioner
notes alleged inconsistencies in the testimony that provided the son with an
alibi for the time of the abduction.  Even assuming the truth of these
assertions, the jury considered all of this testimony and evidence and
nonetheless concluded that petitioner was guilty of the murder beyond a
reasonable doubt.  This evidence, regardless of how petitioner
characterizes it, would remain the same even assuming the mtDNA
analysis revealed the results for which petitioner hopes.[4]  

¶ 20.         We
conclude that the most substantial result the available testing could yield¾that the hair
came from the girlfriend, her son, or someone in their matrilineal lineage¾would not
sufficiently shake our confidence in the jury’s verdict in light of the other
evidence available to jurors in reaching their decision.  The mtDNA tests petitioner seeks would not create a reasonable
probability of a different outcome at trial.     

Affirmed.  


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Chief
 Justice
 
  











[1]
 We acknowledge that we have, on occasion, mistakenly described a
petitioner’s burden in establishing the prejudice prong of an
ineffective-assistance-of-counsel claim using precisely the erroneous terms we
explicitly reject today.  See Grega, 2003
VT 77, ¶ 7 (“[A] petitioner must show by a preponderance of the evidence that . . . there is a reasonable probability that,
but for counsel’s unprofessional errors, the proceedings would have resulted in
a different outcome.”); In re Plante, 171 Vt.
310, 313, 726 A.2d 873, 876 (2000) (same).  Although the confusing wording
did not in any of these previous cases alter the legally correct outcome, we
here clarify so as to avoid any future confusion.     






[2]  Since we review de novo, it is not
critical to determine whether the trial court applied the correct standard in
this case.  In any event, we do not, as petitioner urges, take the trial
court’s extraneous language with respect to the exculpatory value of DNA
evidence in sex-assault cases to mean that it misunderstood the standard. 
To the extent that the court observed that DNA derived from semen not matching
an alleged perpetrator of a sexual assault might tend to completely exonerate a
defendant by virtue of the specific physical nature of such an attack, the
trial court merely did so to demonstrate the opposite extreme along the
spectrum of confidence in a jury’s conclusion.  The trial court correctly
concluded that petitioner failed to carry his burden under the traditional
understanding of the standard commanded by the term “reasonable probability.”  


 





[3]
 It does not appear from the record that the hairs would be useful for
anything other than this limited mitochondrial testing.  As petitioner
recognized in his amended petition, the director of Vermont’s forensic
laboratory indicated by affidavit only that the hair samples unsuitable for
microscopic analysis at the time of the trial “could [now] be subjected to
mitochondrial DNA (mtDNA) analysis.”





[4]
 We need not decide whether a test result definitively identifying the son
as the source of the hair would create a reasonable probability of a different
outcome.  Given the available technology, that result is not possible.